Filed 3/22/11 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2011 ND 62

Sara Renae Prchal (n/k/a Sara Renae Gerdon), Plaintiff and Appellee

v.

Bradley Lawrence Prchal, Defendant and Appellant

No. 20100128

Appeal from the District Court of Richland County, Southeast Judicial District, the Honorable Daniel D. Narum, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Janel Brudvik Fredericksen, P.O. Box 38, Wahpeton, N.D. 58074-0038, for plaintiff and appellee.

Jonathan T. Garaas, DeMores Office Park, 1314 23rd Street South, Fargo, N.D. 58103-3796, for defendant and appellant.

Prchal v. Prchal

No. 20100128

Crothers, Justice.

[¶1] Bradley Prchal appeals from a district court order and amended divorce judgment denying his motion to find Sara Prchal, now Sara Gerdon, in contempt and granting Gerdon’s motion to amend the divorce judgment.  We conclude the district court did not abuse its discretion in denying Prchal’s motion to find Gerdon in contempt and did not err in modifying the parties’ existing parenting time schedule.  We further conclude the court did not err in appointing a parenting coordinator and ordering the parents to undergo counseling.  We affirm.

I

[¶2] Prchal and Gerdon were married in 1995 and were divorced in 2002 under a stipulated divorce and property settlement agreement.  Prchal and Gerdon have three children, born in 1992, 1997, and 1999.  The divorce judgment granted Gerdon primary residential responsibility of the parties’ three children and awarded Prchal parenting time.  The judgment was amended in 2003, in part, to address scheduling parenting time.  The record reflects the parties have had difficulty implementing the divorce judgment’s parenting time schedule including multiple motions to amend in 2003 and 2005, motions in January and June 2005 denied as untimely and a contempt citation in 2006 against Prchal for nonpayment of medical bills.

[¶3] In September 2009, Prchal filed a motion to find Gerdon in contempt, and Gerdon responded with a motion to modify the existing schedule for parenting time, to appoint a parenting coordinator, and to mandate co-parenting counseling.  The parties’ 2009 motions involve a continuing dispute regarding Prchal’s summer parenting time.  During those months, Prchal receives two additional weeks of parenting time each month, which he schedules.  After a December 2009 hearing, the district court denied Prchal’s contempt motion and granted Gerdon’s motion to modify Prchal’s parenting time. 

II

[¶4] Prchal argues the district court abused its discretion in denying his motion to find Gerdon in contempt. 

[¶5] A party seeking a contempt sanction under N.D.C.C. ch. 27-10 must clearly and satisfactorily prove the alleged contempt was committed.  
Berg v. Berg
, 2000 ND 37, ¶ 10, 606 N.W.2d 903; 
Flattum-Riemers v. Flattum-Riemers
, 1999 ND 146, ¶ 5, 598 N.W.2d 499.  “Under N.D.C.C. § 27-10-01.1(1)(c), ‘[c]ontempt of court’ includes ‘[i]ntentional disobedience, resistance, or obstruction of the authority, process, or order of a court or other officer.’”  
Harger v. Harger
, 2002 ND 76, ¶ 14, 644 N.W.2d 182.  “To warrant a remedial sanction for contempt, there must be a willful and inexcusable intent to violate a court order.”  
Harger
, at ¶ 14; 
see also
 
Berg
, at ¶ 10; N.D.C.C. § 27-10-01.1(4).  An inability to comply with an order is a defense to contempt proceedings, but the alleged contemnor has the burden to prove the defense.  
Harger
, at ¶ 15.  Determining whether a contempt has been committed lies within the district court’s sound discretion, which will not be overturned on appeal absent an abuse of that discretion.  
Millang v. Hahn
, 1998 ND 152, ¶ 7, 582 N.W.2d 665.  “[A] court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner or when it misinterprets or misapplies the law.”  
Id.
 

[¶6] Prchal contends the district court should have found Gerdon in contempt because clear and “uncontroverted evidence” showed she unreasonably denied him parenting time, primarily during the summer of 2009.  Prchal asserts that he controls the timing for the summer custodial visitation under the amended judgment and that Gerdon has no good-faith defense for failing to follow the scheduled visitation. 

[¶7] Gerdon responds she did not intentionally interfere with Prchal’s parenting rights.  She cites continuing conflicts over interpretation of the parties’ scheduling of parenting time in the summer months, and that some of Prchal’s “litigation letters” to her, which Prchal submitted as evidence of Gerdon’s non-compliance, were sent after Prchal had approved Gerdon’s request for vacation time and that Prchal had not requested time be made-up.  Gerdon testified that she did not intentionally or repeatedly deny Prchal parenting time and that the parties have conflicting interpretations of the judgment concerning scheduling summer visitation. 

[¶8] In denying Prchal’s motion, the district court held Prchal did not meet his burden of showing Gerdon was in contempt and specifically found Gerdon had not frustrated his parenting time.  The court also found that although scheduling changes in the parenting time were made, Prchal’s parenting time was not interrupted or disturbed and he clearly received his parenting time.  Although evidence existed of some non-compliance with the amended judgment’s required parenting time, the court denied Prchal’s motion to find Gerdon in contempt.  Under our standard of review and the district court’s responsibility to weigh the witnesses’ credibility, we are not persuaded the court’s decision to deny Prchal’s contempt motion was arbitrary, unreasonable or unconscionable, or was a misinterpretation or misapplication of the law.  We therefore conclude the district court did not abuse its discretion in denying Prchal’s contempt motion.

III

[¶9] Prchal contends Gerdon had no legal basis to seek a modification of the parenting time schedule.  He also argues the district court erred in modifying his parenting time because no material change in circumstances existed and the change was not in the children’s best interests.

A

[¶10] Section 14-05-22, N.D.C.C., as amended in August 2009, applies to Gerdon’s motion in this case and provides district courts with continuing jurisdiction over parenting rights and responsibilities, including disputes regarding parenting time after the initial divorce judgment:

“1. In an action for divorce, the court, before or after judgment, 
may give direction for parenting rights and responsibilities of the children
 of the marriage and may vacate or modify the same 
at any time
.  Any award or change of primary parental responsibilities must be made in accordance with the provisions of chapter 14-09.

“2. After making an award of primary residential responsibility, the court, 
upon request of the other parent
, shall grant such rights of parenting time as will enable the child to maintain a parent-child relationship that will be beneficial to the child, unless the court finds, after a hearing, that such rights of parenting time are likely to endanger the child’s physical or emotional health.”

 

(Emphasis added.)  “Parental rights and responsibilities” is defined as “all rights and responsibilities a parent has concerning the parent’s child.”  N.D.C.C. § 14-09-

00.1(2).  “‘Primary residential responsibility’ means a parent with more than fifty percent of the residential responsibility.”  N.D.C.C. § 14-09-00.1(6).  “‘Parenting time’ means the time when the child is to be in the care of a parent.”  N.D.C.C. § 14-

09-00.1(5).  Additionally, N.D.C.C. § 14-09-33 provides that “[a]ny law that refers to the ‘custody’ of a child means the allocation of parental rights and responsibilities as provided in this chapter” and that “[a]ny law that refers to a ‘custodial parent’ or ‘primary residential responsibility’ means a parent with more than fifty percent of the residential responsibility and any reference to a noncustodial parent means a parent with less than fifty percent of the residential responsibility.”

[¶11] In 
Helfenstein v. Schutt
, we said that “once an initial custody decision has been made, [parenting time] modifications are governed by” N.D.C.C. § 14-05-22(2) and by standards set forth in caselaw.  2007 ND 106, ¶¶ 15-16, 735 N.W.2d 410.  “To modify [parenting time], the moving party must demonstrate a material change in circumstances has occurred since entry of the previous [parenting time] order and that the modification is in the best interests of the child.”  
Dufner v. Trottier
, 2010 ND 31, ¶ 6, 778 N.W.2d 586 (citing 
Ibach v. Zacher
, 2006 ND 244, ¶ 8, 724 N.W.2d 165).  “‘A district court’s decision to modify [parenting time] is a finding of fact, which will not be reversed on appeal unless clearly erroneous.’”  
Dufner
, at ¶ 6 (quoting 
Hanson v. Hanson
, 2005 ND 82, ¶ 20, 695 N.W.2d 205).  “‘A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or if . . . on the entire evidence we are left with a definite and firm conviction a mistake has been made.’”  
Dufner
, at ¶ 6 (quoting 
Kienzle v. Selensky
, 2007 ND 167, ¶ 14, 740 N.W.2d 393).  In applying that standard, we do “not reweigh evidence or reassess witness credibility when the evidence supports the [district] court’s findings.”  
Id.

[¶12] To modify parenting time, “a material change of circumstances occurs when important new facts arise that were unknown at the time of the initial [parenting time] order.”  
Dufner
, 2010 ND 31, ¶ 7, 778 N.W.2d 586 (citing 
Helfenstein
, 2007 ND 106, ¶ 18, 735 N.W.2d 410).  
See also
 
Young v. Young
, 2008 ND 55, ¶¶ 14-15, 746 N.W.2d 153 (mother’s scheduling problems, together with the child’s recent behavior, constituted sufficient material change in circumstances) (citing 
Ibach v. Zacher
, 2006 ND 244, ¶ 10, 724 N.W.2d 165 (mother’s out-of-town move and father’s illness a sufficient material change); 
Simburger v. Simburger
, 2005 ND 139, ¶ 18, 701 N.W.2d 880 (mother’s agreement for unsupervised visitation with father followed by mother’s unwillingness to allow unsupervised visitation constituted a material change); 
Reinecke v. Griffeth
, 533 N.W.2d 695, 698-99 (N.D. 1995) (son’s attention deficit disorder diagnosis coupled with the visitation’s interference with son’s school work is an implied material change)).  

[¶13] Our decisions also provide the standard to determine whether a modification is in a child’s “best interests” based on the factual circumstances of each case.  
See
 
Dufner
, 2010 ND 31, ¶¶ 9-10, 778 N.W.2d 586 (affirming visitation modification where court found children were frustrated with incessant bickering between parents and stating “[c]ontinually exposing a child to adult conflict is not in that child’s best interests”); 
Reinecke
, 533 N.W.2d at 698-99 (holding modification was in the children’s best interests where original visitation order interfered with their weeknight routine, contributing to behavior problems at home, poor performance at school and causing conflict between the parents).

B

[¶14] 
Prchal contends the district court did not have authority to modify his parenting time because he did not seek relief and N.D.C.C. § 14-05-22(2) does not authorize Gerdon to request relief resulting in reduction of his parenting time.
 
 
Prchal states Gerdon’s motion to modify parenting time did not cite N.D.R.Civ.P. 60 as authority to amend the judgment and instead only relied
 on N.D.C.C. § 14-05-22(2).  
Prchal argues N.D.C.C. § 14-05-22(2) authorizes only the “other parent” to request changes in parenting time schedules and reserves only to the parent without primary residential responsibility the ability to invoke the district court’s continuing jurisdiction to modify an award of parenting time.  He claims the parent with primary residential responsibility may not seek modification of the parties’ parenting time schedule.
  

[¶15] Section 14-05-22, N.D.C.C., contains two subsections: the first providing district court’s with continuing jurisdiction over certain post-judgment matters in divorce actions, and the second relating to parenting time of the parent who does not have primary residential responsibility.  “Statutory interpretation is a question of law which on appeal is fully reviewable.”  
Great Western Bank v. Willmar Poultry Co.
, 2010 ND 50, ¶ 7, 780 N.W.2d 437.  “Words in a statute are given their plain, ordinary and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears.”  
Id.
 at ¶ 7 (quotations omitted); 
see
 N.D.C.C. § 1-02-02.  “Statutes are construed as a whole and are harmonized to give meaning to related provisions” and “should be harmonized to avoid conflicts between them.”  
Great Western Bank
, at ¶ 7 (quotation omitted); 
see
 N.D.C.C. § 1-02-07.  “If the language of a statute is ambiguous or doubtful in meaning, a court may consider extrinsic aids, including legislative history, to determine legislative intent.”  
Stockman Bank v. AGSCO, Inc.
, 2007 ND 26, ¶ 18, 728 N.W.2d 142 (citing N.D.C.C. § 1-02-39).  “However, we do not consider legislative history when statutory language is unambiguous.”  
Farmers Union Mut. Ins. Co. v. Associated Elec. & Gas Ins. Servs. Ltd.
, 2007 ND 135, ¶ 9, 737 N.W.2d 253.

[¶16] The plain language of the statute and the application of our rules of construction require that we reject Prchal’s reading of N.D.C.C. § 14-05-22(2) as a limitation on which parent can move to modify parenting time.  Section 14-05-22(1), N.D.C.C., provides:

“In an action for divorce, the court, before or after judgment, may give direction for parenting rights and responsibilities of the children of the marriage and may vacate or modify the same at any time.  Any award or change of primary parental responsibilities must be made in accordance with the provisions of chapter 14-09.”

 

This subsection gives the district court broad authority over “parenting rights and responsibilities of the children of the marriage.”  
Id.
  We have stated that this subsection permits motions pertaining to “custody, care, and education” of the children of the marriage, including the power to vacate or modify any decree if it is in the best interests of the children.  
See
 
Zeller v. Zeller
, 2002 ND 35, ¶ 16, 640 N.W.2d 53; 
Malaterre v. Malaterre
, 293 N.W.2d 139, 142 (N.D. 1980).  “This is true regardless of any contract of the parties to the contrary.”  
Malaterre
, at 142; 
see also
 
Zeller
, at ¶ 16; 
Tiokasin v. Haas
, 370 N.W.2d 559, 562 (N.D. 1985); 
Mathisen v. Mathisen
, 276 N.W.2d 123, 129 (N.D. 1979); 
Voskuil v. Voskuil
, 256 N.W.2d 526, 529 (N.D. 1977); 
Foster v. Nelson
, 206 N.W.2d 649, 650 (N.D. 1973).  This continuing jurisdiction includes “the authority to allocate various reasonable rights to the noncustodial parent.”  
Ackerman v. Ackerman
, 1999 ND 135, ¶ 13, 596 N.W.2d 332 (citing 
Dickson v. Dickson
, 1997 ND 167, ¶ 10, 568 N.W.2d 284, and N.D.C.C. § 14-05-22(1)).  “Visitation is one of the reasonable rights allowed the noncustodial parent.”  
Ackerman
, at ¶ 13; 
Muraskin v. Muraskin
, 336 N.W.2d 332, 336 (N.D. 1983).

[¶17] By contrast, N.D.C.C. § 14-05-22(2) relates only to ensuring the parent not having primary residential responsibility receives parenting time, if requested.  Specifically, N.D.C.C. § 14-05-22(2) provides:

“After making an award of primary residential responsibility, the court, upon request of the other parent, shall grant such rights of parenting time as will enable the child to maintain a parent-child relationship that will be beneficial to the child, unless the court finds, after a hearing, that such rights of parenting time are likely to endanger the child’s physical or emotional health.”

 

A plain reading of this subsection requires a court to grant parenting time to the parent not having primary residential responsibility when such rights of parenting time are requested.  This subsection guarantees the parent not having primary residential responsibility parenting time to maintain a parent-child relationship that is beneficial to the child, unless such parenting would likely endanger the child’s physical or emotional health.  Thus, the plain language of the statute is to protect the parenting time of the “other parent” if it is requested.  Notably, this subsection does not limit the district court’s continuing jurisdiction over parenting rights and responsibilities under N.D.C.C. § 14-05-22(1), nor does it limit either parent’s ability to invoke the court’s continuing jurisdiction under N.D.C.C. § 14-05-22(1), other than that any award or change of primary parental responsibilities must be made under N.D.C.C. ch. 14-09.

[¶18] Although the language of N.D.C.C. § 14-05-22 is not ambiguous, we note the legislative history of N.D.C.C. § 14-05-22(2) is consistent with our construction of the statute.  This subsection was first enacted in 1979 and originally stated:

“2. After making an award of custody, the court shall, upon request of the noncustodial parent, grant such rights of visitation as will enable the child and the noncustodial parent to maintain a parent-child relationship that will be beneficial to the child, unless the court finds, after a hearing, that visitation is likely to endanger the child’s physical or emotional health.”

 

See
 1979 N.D. Sess. Law ch. 194, § 1.  The 1979 enactment of N.D.C.C. § 14-05-

22(2), in addition to the then newly enacted N.D.C.C. §§ 14-09-06.1 and 14-09-06.2, “codified many of the guideline factors prescribed by this court over the years for trial court use in resolving child custody disputes.”  
Voth v. Voth
, 305 N.W.2d 656, 657 (N.D. 1981) (citing 
Lapp v. Lapp
, 293 N.W.2d 121 (N.D. 1980)).  Nothing in the legislative history of this 1979 amendment suggests that the intent of this additional subsection was to limit either party’s access to the district court’s continuing jurisdiction under N.D.C.C. § 14-05-22(1).  Further, we note the 2009 amendment to N.D.C.C. § 14-05-22(2) merely changed “noncustodial parent” to “other parent.”  
See
 2009 N.D. Sess. Law ch. 149, § 1.

[¶19] We acknowledge that in 
Helfenstein
, this Court stated that “once an initial custody decision has been made, visitation [i.e., parenting time] modifications are governed by a different statute, N.D.C.C. § 14-05-22(2).”  2007 ND 106, ¶ 15, 735 N.W.2d 410.  This statement, however, was not intended to suggest that the district court’s continuing jurisdiction under N.D.C.C. § 14-05-22(1) was somehow limited or that the party receiving primary residential responsibility could not invoke the court’s continuing jurisdiction.  We merely held that application of N.D.C.C. § 14-09-

06.6, which provides certain limitations on post-judgment child custody modifications, did not apply to post-judgment visitation modifications under N.D.C.C. § 14-05-22.  We therefore clarify 
Helfenstein
 to say that the district court’s continuing jurisdiction over post-judgment modification of parenting time is not limited by N.D.C.C. § 14-05-22(2) and that the party receiving primary residential responsibility is not barred from invoking the district court’s continuing jurisdiction to address post-judgment parenting time matters when warranted under our caselaw.

[¶20] We conclude the phrase “upon request of the other parent” in N.D.C.C. § 14-

05-22(2) does not limit the district court’s continuing jurisdiction, nor does that phrase limit either parent’s ability to invoke the court’s continuing jurisdiction to address issues relating to “parenting rights and responsibilities” under N.D.C.C. § 14-

05-22(1).  This necessarily includes issues relating to “parenting time.”  Furthermore, N.D.C.C. § 14-05-22(1) makes clear that any award or change in primary parental responsibilities must be made in accordance with N.D.C.C. ch. 14-09.  We conclude N.D.C.C. § 14-05-22 permits a motion to modify parenting time by the parent with primary residential responsibility.  We therefore reject Prchal’s argument that Gerdon may not seek modification of parenting time.

C

[¶21] Prchal argues the district court erred in modifying the parties’ structured parenting time schedule because no material change in circumstances existed and because any change was not in the children’s best interests.  Prchal argues the parties and district court knew the children would age, so that fact is not a “material change” justifying modification.  Prchal asserts his parenting rights must be protected by the parties’ contractual stipulations, which were accepted by two different district court judges.  He claims this district court judge’s interpretation of the amended judgment was incorrect.  

[¶22] Gerdon contends the court’s findings support a material change of circumstances because the court found (1) the children are now older and more involved with extracurricular activities which coincide with Prchal’s parenting time;  (2) Prchal has refused to accommodate the children’s commitments to athletics, church and other extracurricular activities, straining the relationship with the children; and (3) constant disagreements between Prchal, Gerdon, and the children regarding scheduled events that occur during Prchal’s parenting time have caused significant stress to the children. 

[¶23] Although the district court did not specifically state a material change of circumstances had occurred, the court made several specific findings demonstrating that the circumstances surrounding the present parenting time schedule should be modified due to the parties’ continuing conflict.  The court found the existing amended judgment was “ill suited to provide a clear guide for the parties’ parenting time” and had “contributed to the conflict between the parties.”  The court sought to provide “clarification” for the parties.  We understand the basis for the court’s decision.

[¶24] The district court also found the parenting time modification was in the children’s best interests because, as children of a divorce, they should not be required to miss school, athletic, religious or other reasonable activities.  The court found it was in the children’s best interests to modify parenting time so that, upon reaching the age of 14, the children may fully participate in school, extracurricular or employment opportunities.  The court permitted the parenting time schedule to be “modified” to “clarify” that Prchal’s parenting time does not include alternating weekends and a weeknight visitation during June, July and August, but consists only of three two-week periods.  The court also modified the parenting time schedule to avoid conflicts on holidays and to permit the children to participate in extracurricular activities.  Although the court’s “clarification” or modification, however designated,  may result in less parenting time for Prchal during the summer months, the modification provides more certainty in scheduling throughout the entire year.

[¶25] 
Evidence in this record establishes a “material change in circumstances” based on the alienation of the oldest child, on the concerns for the younger child and on the changes in the parent-child relationship.  Evidence in this record supports the court’s findings on the best interest of the children, and we are not left with a definite and firm conviction a mistake has been made.  We therefore conclude the district court did not clearly err in modifying the existing parenting time schedule.

IV

[¶26] Prchal argues the district court erred when it “imposed” a parenting coordinator on the parents and “mandated” the parents to undergo counseling and treatment.

[¶27] Under N.D.C.C. § 14-09.2-02, “[i]n any action for divorce, . . .  the court, upon its own motion or by motion or agreement of the parties, may appoint a parenting coordinator to assist the parties in resolving issues or disputes related to parenting time.”  This Court recognizes a district court may, in its discretion, “order counseling for a child’s parent if it is in the child’s best interests.”  
See
 
Wessman v. Wessman
, 2008 ND 62, ¶ 9, 747 N.W.2d 85; 
Hendrickson v. Hendrickson
, 2000 ND 1, ¶ 23, 603 N.W.2d 896.  Both the decision to appoint a parenting coordinator and to order counseling are committed to the district court’s discretion.

[¶28] Here, the district court ordered both parents to attend co-parenting counseling and appointed a parenting coordinator.  The court found that the parties are “in dire need of a parenting coordinator due to the high conflict” between the parties and that co-parenting counseling was in the children’s best interests because of the parties’ continuing conflict.  The court cited the parties’ procedural history since 2002, finding evidence “clearly indicate[d]” the parties’ conflict had undermined relationships and negatively affected the children.  The court also found Prchal’s relationship with the oldest child had deteriorated because of conflicts arising from school activities, sporting events and religious activities occurring during Prchal’s parenting time.  

[¶29] Evidence in this record supports the district court’s findings, and we conclude the court did not act in an arbitrary, unreasonable, or unconscionable manner and did not misinterpret or misapply the law.  Therefore, the court did not abuse its discretion in appointing a parenting coordinator and ordering the parents to undergo counseling and treatment.

V

[¶30] We have reviewed Prchal’s remaining arguments and conclude they are unnecessary to our decision or are without merit.  The district court’s order and amended judgment are affirmed.

[¶31] Daniel J. Crothers

Mary Muehlen Maring

Carol Ronning Kapsner

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.