2017 ND 53

**Keaton J. O'HARA, Plaintiff and Appellee**

v.

**Keanna S.K. SCHNEIDER, Defendant and Appellant**

**No. 20160318**

Supreme Court of North Dakota.

Filed 3/7/2017

Markus A. Powell (on brief), Ashley H. Hurlbert (appeared), and Lexie Hoemberg (argued), under the Rule on Limited Practice of Law by Law Students, 513 Elks Drive, Dickinson, N.D. 58601, for plaintiff and appellee.

Kristin A. Redmann, 400 East Broadway Avenue, Suite 410, P.O. Box 7097, Bismarck, N.D. 58507–7097, for defendant and appellant.

Tufte, Justice.

[¶ 1] Keanna Schneider appeals a district court order denying her motion to modify the parenting time of Keaton O'Hara from unsupervised to supervised parenting time. Schneider sought modification after an incident in which O'Hara punched her in the face in front of their child during an exchange. We conclude that the district court erred in handling this case and we reverse the court's order denying Schneider's motion, retain jurisdiction under N.D.R.App.P. 35(a)(3), and remand for additional findings.

I

[¶ 2] Schneider and O'Hara began dating when they were both juniors in high school, and their child was born two years later, in late 2014. By then, the relationship had begun to deteriorate and ended shortly thereafter. O'Hara exhibited anger problems, which manifested themselves in violent acts. During a dispute in a car, O'Hara made threatening comments about taking out his handgun before he began driving erratically, causing Schneider to fear for her life. His violent acts continued over the next year and a half. He kicked a dog in front of their child. He pled guilty to disorderly conduct in June 2015 and

again in January 2016 for incidents during which he was violent toward Schneider.

[¶ 3] O'Hara also displayed controlling behavior during this period. He frequently interfered in Schneider's life and expressed hatred for her boyfriend. He used their child on multiple occasions to control the mother's actions. For example, he would threaten not to return the child unless Schneider answered his text messages. As a whole, the record reflects Schneider being stern but civil toward the father.

[¶ 4] In December 2015, O'Hara and Schneider agreed to a parenting plan in which Schneider would have primary residential responsibility over the child. The record reflects that O'Hara's hostile behavior toward Schneider continued at least through January 2016. In May, the parents arranged to exchange their child at a correctional center. A security camera recorded the exchange, and it shows O'Hara punching Schneider in the face, knocking her to the ground. Police officers arrested O'Hara. Schneider testified that as a result of this incident, the child was traumatized and lost sleep for a month. Following this incident, the State charged O'Hara with aggravated assault, a class C felony. He pled guilty to a reduced charge.

[¶ 5] The day after the assault, Schneider sought a domestic violence restraining order against O'Hara. At the hearing on the restraining order, the district court commented that the domestic violence was between the parties, not the parties and the child, finding significance in a lack of "direct threat" between O'Hara and the child. After receiving the restraining order against O'Hara, Schneider moved the district court to modify O'Hara's parenting time from unsupervised to supervised. During the modification hearing, the court refused to allow any testimony regarding events that had occurred before the De-

cember 2015 order establishing primary residential responsibility and parenting time. The district court ultimately denied Schneider's request to restrict O'Hara's parenting time, reasoning that O'Hara committed domestic violence against the mother but not the child. We note that the protection order hearing and the modification hearing were held before different district judges, but both apparently labored under the same misconception that domestic violence between parents can be discounted if a child is not directly threatened.

II

[¶ 6] A district court must "grant such rights of parenting time as will enable the child to maintain a parent-child relationship that will be beneficial to the child, unless the court finds, after a hearing, that such rights of parenting time are likely to endanger the child's physical or emotional health." N.D.C.C. § 14-05-22. In determining whether to modify parenting time, we have instructed the district courts to use a standard similar to that used to modify primary residential responsibility: "To modify parenting time, the moving party must demonstrate a material change in circumstances has occurred since entry of the previous parenting time order and that the modification is in the best interests of the child." Prchal v. Prchal, 2011 ND 62, ¶ 11, 795 N.W.2d 693 (quotation marks omitted).

[¶ 7] Before we turn to Schneider's arguments, we first consider the material change in circumstances prong and how it relates to cases in which a party alleges domestic violence. Where there is domestic violence leading up to an order, a new act of domestic violence following the order arguably would not be a material "change" in circumstances. The new act might be

considered a continuation of the same circumstance that led to the original order.

[¶ 8] We clarify the application of the "material change" prong by holding that where the initial order included consideration of domestic violence, a new domestic violence act by the same parent satisfies the "material change" prong as a matter of law. In such an instance, the district court must consider all relevant evidence of domestic violence, regardless of whether the original order was based on a stipulated agreement. We reason that when a district court issues its original order establishing residential responsibility or parenting time, the order necessarily implies that the parenting plan was tailored to end the domestic violence. The order does not erase prior domestic violence acts by prohibiting a district court from considering those acts. Further domestic violence after the initial order is always a material change in circumstances.

[¶ 9] We now consider Schneider's arguments. She argues the district court erred by (1) prohibiting her from eliciting testimony of O'Hara's domestic violence that occurred prior to the original order establishing primary residential responsibility; (2) refusing to consider such relevant evidence; (3) failing to make specific findings under the modification standard; (4) failing to appropriately apply the best interests factors; and (5) downplaying O'Hara's violence. We address each contention below.

## A

[¶ 10] We first examine whether the district court erred by prohibiting Schneider from eliciting testimony of O'Hara's domestic violence that occurred prior to the original order. "The trial court has broad discretion on evidentiary matters." Wetch v. Wetch, 539 N.W.2d 309, 311 (N.D.1995). "On appeal, we will not overturn a trial court's decision admitting or excluding evidence on relevancy grounds unless the trial court has abused its discretion." Id. The abuse of discretion standard is as follows:

A district court abuses its discretion if it acts in an arbitrary, unconscionable, or unreasonable manner, if its decision is not the product of a rational mental process leading to a reasonable determination, or if it misinterprets or misapplies the law. An abuse of discretion is never assumed and must be affirmatively established, and this Court will not reverse a district court's decision merely because it is not the one it would have made had it been deciding the motion.

Anderson v. Baker, 2015 ND 269, ¶ 7, 871 N.W.2d 830 (citations omitted).

[¶ 11] On numerous occasions at the hearing, the district court prevented Schneider's counsel from eliciting testimony concerning O'Hara's domestic violence acts committed before the December 2015 order establishing parenting time. More than twenty years ago, this Court held that district courts must consider relevant pre-custody evidence when the original order was based on a stipulated agreement. Wetch, 539 N.W.2d at 312 (reversing for abuse of discretion the trial court's refusal to consider evidence of domestic violence prior to stipulated judgment). When the original order is based on a stipulated agreement, district courts retain limited discretion to decide whether to consider such relevant evidence only if the previous judge issued court-made findings on such evidence. Id.; Mock v. Mock, 2004 ND 14, ¶ 13, 673 N.W.2d 635. This Court has frequently cited this principle. E.g., Kelly v. Kelly, 2002 ND 37, ¶ 22, 640 N.W.2d 38; Woods v. Ryan, 2005 ND 92, ¶ 11, 696 N.W.2d 508; Mairs v. Mairs, 2014 ND 132, ¶ 7, 847 N.W.2d 785; Haag v. Haag, 2016 ND 34, ¶ 9, 875 N.W.2d 539. By refusing to consider relevant evidence showing a pat-

tern of domestic violence prior to an existing order, the district court blinds itself to the full scope and extent of a serious and ongoing problem.

[¶ 12] O'Hara's domestic violence acts were not litigated during the earlier proceeding establishing primary residential responsibility. The order was based on a settlement agreement that did not mention O'Hara's domestic violence acts and controlling behavior. The settlement agreement contains one reference to O'Hara agreeing to attend an anger management class, which the record suggests he did not attend. The district court made no findings on O'Hara's domestic violence acts and controlling behavior. Accordingly, the district court misinterpreted or misapplied the law when it sustained O'Hara's multiple objections to relevant testimony related to pre-judgment domestic violence acts and behavior. The district court abused its discretion in excluding this testimony.

B

[¶ 13] We next determine whether the district court erred by refusing to consider the evidence that was before it relating to O'Hara's pre-judgment domestic violence. The district court did not strike the affidavits in which Schneider alleged O'Hara's pre-judgment domestic violence—it simply expressly refused to consider that evidence in its analysis. Whether a district court properly applies North Dakota case law is a question of law. See Serr v. Serr, 2008 ND 56, ¶ 19, 746 N.W.2d 416.

[¶ 14] The record reflects Schneider's counsel explained to the district court that O'Hara's earlier domestic violence acts were not presented to the court during the original proceeding. Despite this, the district court's order states:

I have no intention of relitigating this matter. These people brought this matter to conclusion through their stipulated agreement in December of 2015. The issues raised that occurred before that date, if they truly were so bad that the parties now want to bring those to the attention of the Court, surely they would have not signed some type of stipulation and agreement to resolve the issues of primary residential responsibility and parenting time. If the parties wanted to litigate matters occurring prior to December, 2015, they should not have signed the agreement resolving those issues.

This Court recently reversed a district court for using the same reasoning as the district court here. Haag, 2016 ND 34, ¶¶ 14, 16, 875 N.W.2d 539. In Haag, the parents agreed to equal residential responsibility, and the original order establishing such responsibility relied on their stipulated agreement. Id. at ¶ 2. The mother later sought to modify primary residential responsibility, parenting time, and child support. "[M]ost of the evidence" the mother submitted to the district court concerned the father's behavior prior to the original order. Id. at ¶ 5. The district court refused to consider this evidence because it reasoned the behavior was "known to the parties before the divorce." Id. at ¶ 10. We reversed, reasoning that whether such facts were known to the parties was irrelevant. The district court must consider facts that were "unknown to the court at the time of the prior order." Id. at ¶ 12 (emphasis altered) (citing N.D.C.C. § 14–09–06.6(6)(a)).

[¶ 15] Similar to Haag, as discussed above in II(A), the record does not reflect and neither party argues that O'Hara's domestic violence acts were litigated during the earlier proceeding. The district court misapplied the law by refusing to

consider relevant pre-judgment conduct of the parties.

## C

[¶ 16] We next turn to whether the district court made specific findings under the parenting time modification standard. In actions "tried upon the facts without a jury," N.D.R.Civ.P. 52(a)(1) requires the district court to "find the facts specially." We have further explained:

> Under N.D.R.Civ.P. 52(a), the trial court is required to make findings of fact and conclusions of law sufficient to enable the appellate court to understand the factual determinations made by the trial court and the basis for its conclusions of law and the judgment or order entered thereon. The trial court's findings of fact and conclusions of law should be stated with sufficient specificity to assist the appellate court's review and to afford a clear understanding of the trial court's decision. Conclusory, general findings do not comply with N.D.R.Civ.P. 52(a), and a finding of fact that merely states a party has failed in its burden of proof is inadequate under the rule. Rather, the trial court must specifically state the subordinate facts upon which its ultimate factual conclusions rest. Although findings of fact should be stated to afford a clear understanding of the court's decision, findings are adequate if this Court can discern from them the factual basis for the trial court's determination.

Rothberg v. Rothberg, 2006 ND 65, ¶ 14, 711 N.W.2d 219 (citations omitted).

[¶ 17] The district court failed to make specific findings under the parenting time modification standard. This action was tried upon the facts without a jury, requiring the district court to make specific findings on whether a material change in circumstances had occurred and whether modifying parenting time would be in the best interests of the child. The district court's order, however, does not contain specific findings under this standard.

[¶ 18] First, despite videotape footage of O'Hara punching Schneider in the face and knocking her down, which the district court considered "shocking," it did not make a finding on whether "a material change in circumstances" had occurred. Second, the district court cited the domestic violence factor provision and dismissed it by saying it was not "applicable under the circumstances." This failure to specify the court's rationale regarding the application of the presumption leaves us to speculate why the court found it inapplicable. Wessman v. Wessman, 2008 ND 62, ¶ 16, 747 N.W.2d 85 ("When a district court addresses whether evidence of domestic violence triggers the presumption under that statute, we require specific findings and conclusions regarding the presumption so we are not left guessing as to the court's rationale regarding the application of the presumption.").

[¶ 19] Third, the order and the hearing transcript do not reflect that the district court considered any of the best interests factors codified under N.D.C.C. § 14–09–06.2, except for the domestic violence factor. Law v. Whittet, 2014 ND 69, ¶ 9, 844 N.W.2d 885 ("Although the court is not required to make a separate finding on each statutory factor, the court must consider all of the factors and make findings with sufficient specificity to demonstrate the factual basis for its decision."). The district court's failure to make specific findings under the parenting time modification standard leaves us unable to determine whether these factors were considered or the law properly applied. Frey v. Frey, 2013 ND 100, ¶ 17, 831 N.W.2d 753 (reversing denial of motion to modify pri-

mary residential responsibility for inadequate findings).

## D

[¶ 20] We next determine whether the district court properly applied the best interests factors under § 14–09–06.2 in its analysis. Whether a district court properly applies North Dakota statutory law is a question of law. Serr, 2008 ND 56, ¶ 19, 746 N.W.2d 416. The second prong of the parenting time modification standard is whether "modification is in the best interests of the child." Prchal, 2011 ND 62, ¶ 11, 795 N.W.2d 693. The "best interests of the child" for a proposed modification to parenting time requires analysis of the best interests factors under § 14–09–06.2.

[¶ 21] Application of the domestic violence factor involves a statutory presumption that makes this factor distinct from the others. See N.D.C.C. §§ 14–09–29(2) and 14–09–06.2(1)(j). Section 14–09–06.2(1)(j) sets forth a presumption that the violent parent "may not be awarded residential responsibility." Similarly, § 14–09–29(2) provides a presumption regarding a violent parent who does not have primary residential responsibility that the "court shall allow only supervised parenting time." Once the presumption contained in these provisions is raised, the violent parent must present clear and convincing evidence to rebut the presumption. N.D.C.C. §§ 14–09–29(2) and 14–09–06.2(1)(j). This additional step in the analysis makes the domestic violence factor the dominant best interests factor in cases involving domestic violence. Bruner v. Hager, 534 N.W.2d 825, 828 (N.D.1995) ("A trial court cannot treat the violence-presumption as simply another factor in [parenting time]."); Wessman, 2008 ND 62, ¶ 13, 747 N.W.2d 85 ("When there is credible evidence of domestic violence, however, it dominates

the hierarchy of factors to be considered."). Whether either presumption is raised or rebutted, the presence of domestic violence remains a factor that must be considered in the balance. Mowan v. Berg, 2015 ND 95, ¶ 11, 862 N.W.2d 523 ("Although the incident may not be sufficient, standing alone, to trigger the statutory presumption under [§ 14–09–06.2(1)(j) ], the domestic violence still must be considered as one of the best interest factors.").

[¶ 22] At the hearing, the district court attempted to balance the domestic violence factor against the notion that it is in the child's best interests "to have a meaningful relationship with the other" parent. It further explained that the "legislature and the Supreme Court create[ ] all these rules, but the practical is what happens in the courtroom, and that's what we're trying to deal with today, and I've got two competing interests." In its order, the district court cited our cases for the proposition that a child's best interests include having a relationship with both parents.

[¶ 23] The district court erred by (1) balancing the domestic violence factor against other best interests factors without first determining whether the § 14–09–29 presumption had been raised and, if raised, rebutted with clear and convincing evidence; and (2) treating a child's maintaining a relationship with both parents as not just a factor but a predominant best interests factor. This Court has said the factors "impliedly recognize a child's need for a meaningful relationship with both his mother and his father." Burich v. Burich, 314 N.W.2d 82, 87 (N.D.1981). The district court may consider a child's maintenance of a relationship with both parents under factor (e), (m), or any other factor under which it may be relevant. Our precedents, however, do not elevate this as an additional factor that district courts may consider

in substitution for the statutory factors. The district court erred as a matter of law.

### E

[¶ 24] Both trial judges who presided over hearings in this record expressed their reasoning in a way that suggests they did not give consideration to the pattern of domestic violence between the parties as required by the governing statutes. To the extent that it appears the district court blamed the mother for violence committed against her by the father, that is error. To the extent that the district court discounted or disregarded violence not directly targeting the child, that is also error.

[¶ 25] We first discuss the blame placed on the mother for the father's violent actions. The record reflects that the district judge presiding over the domestic violence restraining order hearing told the mother: "You don't force a situation because it's your damn time to get the child." The district judge who heard the motion to modify considered and agreed with the earlier district judge's reasoning, as evidenced by reference to the earlier district judge in the order denying modification. Carrying that reasoning further at the modification hearing, the court watched the video of the father punching the mother and remarked, "He should have never have hit her. She did something before that." He later advised the father not to hit someone even if that person "push[es] a button."

[¶ 26] This Court has reversed district courts for rationalizing an individual's acts of physical violence because the victim "pushed a button." Huesers v. Huesers, 1997 ND 33, ¶¶ 10–11, 560 N.W.2d 219; Anderson v. Hensrud, 548 N.W.2d 410, 413–14 (N.D.1996) (quoting Heck v. Reed, 529 N.W.2d 155, 164 (N.D.1995)). "Domestic violence is not caused by stress in the perpetrator's life, alcohol consumption, or a particular victim's propensity to push a perpetrator's buttons. Rather, domestic violence is a learned pattern of behavior aimed at gaining a victim's compliance." Heck, 529 N.W.2d at 164 (citation omitted). Both judges below erred by considering Schneider's non-violent conduct as provoking or explaining domestic violence committed against her. A parent does not invite violence by asking the other parent to abide by a court-ordered parenting time plan.

[¶ 27] We next discuss whether a parent endangers the well-being of a child by inflicting violence on the other parent but not the child. The district court considered the evidence in the record as demonstrating that a problem exists between O'Hara and Schneider but not between O'Hara and the child. This rationale disregards the many cases in which this Court has stressed that "the lack of violence toward the children does not rebut the presumption" under either § 14–09–06.2(1)(j) or § 14–09–29(2). Engh v. Jensen, 547 N.W.2d 922, 925 (N.D.1996); Bruner, 534 N.W.2d at 828. "The legislature intended that courts presume that any domestic violence negatively impacts the best interests of the children." Engh, at 925 (quoting Heck, 529 N.W.2d at 164). This statutory presumption rests on the premise that children are harmed emotionally and too often physically when they are around perpetrators of domestic violence. E.g., Heck, 529 N.W.2d at 163–64.

[¶ 28] For over twenty years, our cases have instructed district courts to take seriously evidence of domestic violence and faithfully apply the statutory presumptions triggered upon presentation of such evidence. The district court failed to apply the required analysis or make required findings, and thus we reverse for further

findings and analysis consistent with this opinion.

## III

[¶ 29] We reverse and remand the district court's order denying Schneider's motion to amend the judgment with instructions to set forth specific findings and analysis under § 14–09–29(2), specifically whether the presumption against allowing unsupervised parenting time to the perpetrator of domestic violence applies under the circumstances of this case. If the presumption does not apply or if O'Hara rebuts this presumption with clear and convincing evidence, then the district court is instructed to make specific findings on the additional best interests factors under § 14–09–06.2. We further instruct the district court to consider domestic violence as a factor even if the presumption provision does not apply. Mowan, 2015 ND 95, ¶ 11, 862 N.W.2d 523. We retain jurisdiction under N.D.R.App.P. 35(a)(3). The mandate under N.D.R.App.P. 41 shall issue forthwith. After the mandate issues, the district court shall conduct further proceedings in accordance with this opinion within 30 days.

[¶ 30] Jerod E. Tufte

Daniel J. Crothers

Lisa Fair McEvers

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.