2017 ND 159

**Keaton J. O'HARA, Plaintiff and Appellee**

v.

**Keanna S.K. SCHNEIDER, Defendant and Appellant**

No. 20160318

Supreme Court of North Dakota.

Filed 6/29/2017

Markus A. Powell (on brief), Ashley H. Hurlbert (appeared), and Lexie Hoemberg (argued), third-year law student, under the Rule on Limited Practice of Law by Law Students, Dickinson, N.D., for plaintiff and appellee.

Kristin A. Redmann, Bismarck, N.D., for defendant and appellant.

Tufte, Justice.

[¶ 1] Keanna Schneider originally appealed a district court order denying her motion to modify the parenting time of Keaton O'Hara from unsupervised to supervised parenting time. *O'Hara v. Schneider*, 2017 ND 53, ¶ 1, 890 N.W.2d 831. In *O'Hara*, we held the trial court erred by improperly excluding evidence, making insufficient findings, and misapplying the law in analyzing the parties' conduct. We remanded for further proceedings and retained jurisdiction under N.D.R.App.P. 35(a)(3). On remand, the district court issued additional findings and an amended order. We affirm, concluding that the district court complied with our mandate by holding an evidentiary hearing

and that its additional findings were not clearly erroneous.

## I

[¶ 2] We set forth the relevant facts in *O'Hara*, 2017 ND 53, ¶¶ 2–5, 890 N.W.2d 831:

Schneider and O'Hara began dating when they were both juniors in high school, and their child was born two years later, in late 2014. By then, the relationship had begun to deteriorate and ended shortly thereafter. O'Hara exhibited anger problems, which manifested themselves in violent acts. During a dispute in a car, O'Hara made threatening comments about taking out his handgun before he began driving erratically, causing Schneider to fear for her life. His violent acts continued over the next year and a half. He kicked a dog in front of their child. He pled guilty to disorderly conduct in June 2015 and again in January 2016 for incidents during which he was violent toward Schneider.

O'Hara also displayed controlling behavior during this period. He frequently interfered in Schneider's life and expressed hatred for her boyfriend. He used their child on multiple occasions to control the mother's actions. For example, he would threaten not to return the child unless Schneider answered his text messages. As a whole, the record reflects Schneider being stern but civil toward the father.

In December 2015, O'Hara and Schneider agreed to a parenting plan in which Schneider would have primary residential responsibility over the child. The record reflects that O'Hara's hostile behavior toward Schneider continued at least through January 2016. In May, the parents arranged to exchange their child at a correctional center. A security camera recorded the exchange, and it shows O'Hara punching Schneider in the face, knocking her to the ground. Police officers arrested O'Hara. Schneider testified that as a result of this incident, the child was traumatized and lost sleep for a month. Following this incident, the State charged O'Hara with aggravated assault, a class C felony. He pled guilty to a reduced charge.

The day after the assault, Schneider sought a domestic violence restraining order against O'Hara. At the hearing on the restraining order, the district court commented that the domestic violence was between the parties, not the parties and the child, finding significance in a lack of "direct threat" between O'Hara and the child. After receiving the restraining order against O'Hara, Schneider moved the district court to modify O'Hara's parenting time from unsupervised to supervised. During the modification hearing, the court refused to allow any testimony regarding events that had occurred before the December 2015 order establishing primary residential responsibility and parenting time. The district court ultimately denied Schneider's request to restrict O'Hara's parenting time, reasoning that O'Hara committed domestic violence against the mother but not the child. We note that the protection order hearing and the modification hearing were held before different district judges, but both apparently labored under the same misconception that domestic violence between parents can be discounted if a child is not directly threatened.

[¶ 3] We concluded the district court's errors required reversal, and we remanded with instructions for the court to make additional findings under the relevant law. *See O'Hara*, 2017 ND 53, ¶ 29, 890 N.W.2d 831. We retained jurisdiction. *Id.*

[¶ 4] On remand, the district court held an evidentiary hearing for the purpose of making additional findings, and the parties presented new evidence. O'Hara presented direct testimony in the form of several affidavits attesting to his parenting abilities and his strong emotional bond with the child. He also presented his own testimony and that of his anger management counselor, who testified that she had treated O'Hara regarding his anger and coping issues. Schneider presented evidence that O'Hara was convicted of violating the conditions of his domestic violence protection order in August 2016 for sending her a text message and may have again violated the order in November and in March 2017.

[¶ 5] In her supplemental brief, Schneider asserts the district court failed to comply with our instruction by holding a new evidentiary hearing. She also argues the district court clearly erred in its findings.

## II

[¶ 6] We first address Schneider's assertion that the district court deviated from our instruction in *O'Hara*, 2017 ND 53, ¶ 29, 890 N.W.2d 831. We had instructed the district court to "conduct further proceedings in accordance with" our opinion. The district court interpreted our instruction to mean it should hold a new evidentiary hearing. Schneider argues we intended that the district court make proper findings on the record without holding a new evidentiary hearing. We disagree. In the first evidentiary hearing, the district court had improperly excluded evidence. *Id.* at ¶¶ 10–12. A second evidentiary hearing was held to allow Schneider to introduce the improperly-excluded evidence. As well, approximately eight months had elapsed between the time of the previous hearing and our decision. The second evidentiary hearing served to fully inform the court of any changed circumstances and

allowed it to decide the motion to modify parenting time based on the most current information. We conclude the district court's decision to hold a second hearing complied with our instruction.

## III

[¶ 7] We next turn to whether the district court erred on remand by finding O'Hara had rebutted the presumption under N.D.C.C. § 14–09–29(2) with clear and convincing evidence. A district court's parenting time determination is a finding of fact that we review under our clearly erroneous standard. *Engh v. Jensen*, 547 N.W.2d 922, 924 (N.D. 1996). "A finding of fact is clearly erroneous" (1) "if it is induced by an erroneous view of the law"; (2) "if no evidence exists to support it"; or (3) "if the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made." *Id.*

[¶ 8] Under N.D.C.C. § 14–05–22(2), a district court, upon a parent's motion, must determine whether to impose supervised parenting time on the other parent. In doing so, the court considers whether unsupervised visitation is "likely to endanger the child's physical or emotional health." *Id.* We have said the standard used to determine modifications of parenting time is similar to that used for modifications of primary residential responsibility: "To modify parenting time, the moving party must demonstrate a material change in circumstances has occurred since entry of the previous parenting time order and that the modification is in the best interests of the child." *O'Hara*, 2017 ND 53, ¶ 6, 890 N.W.2d 831 (quotation marks omitted). The district court found a material change in circumstances had occurred, and neither party disputes that finding. Accordingly, we turn to the district court's best interests analysis.

[¶ 9] In parenting time cases involving allegations of domestic violence, the domestic violence factor is the dominant best interests factor. *O'Hara*, 2017 ND 53, ¶ 21, 890 N.W.2d 831. Under N.D.C.C. § 14–09–29(2), a presumption the court shall allow only supervised parenting time is raised if the parent not having residential responsibility has committed an act of domestic violence and that domestic violence either (1) "resulted in serious bodily injury or involved the use of a dangerous weapon" or (2) was part of a pattern of domestic violence. Once raised, the presumption requires the district court to "allow only supervised parenting time with that parent unless there is a showing by clear and convincing evidence that unsupervised parenting time would not endanger the child's physical or emotional health." The presumption creates a difficult evidentiary obstacle for the violent parent to overcome, and the legislature created this obstacle for sound policy reasons thoroughly explained by this Court. *E.g., Heck v. Reed*, 529 N.W.2d 155, 161–65 (N.D. 1995).

[¶ 10] The district court found O'Hara raised § 14–09–29(2)'s presumption by finding he had committed a pattern of domestic violence against Schneider. The court found the numerous violent acts that occurred during and after their relationship constituted a pattern of violence, and it found the pattern continued during the pendency of the earlier appeal. The court found this continued pattern of violence to be evidenced by O'Hara's having violated the terms of the domestic violence protection order at least once during his anger management treatment and possibly a second time after the completion of his treatment.

[¶ 11] Despite this, the district court found O'Hara rebutted with clear and convincing evidence the presumption that unsupervised parenting time would endanger the child's physical or emotional health. The court supported this conclusion in part by finding O'Hara actively takes care of the child during his parenting times and they have a strong father-daughter bond. In addition, the court found O'Hara successfully completed his anger management treatment.

[¶ 12] The district court received affidavits from several individuals who had first-hand knowledge of O'Hara's interactions with the child. His parenting activities, such as his feeding, clothing, and bathing the child, indicate that he is not neglecting the child's physical health. This alone does not establish with clear and convincing evidence that a parent is not a danger to a child's physical or emotional health, because a parent can feed, clothe, and bathe a child while still endangering that child. Whether a parent is or is not a danger, particularly where in the recent past that parent was a danger, may be established incrementally and indirectly. Here, O'Hara presented evidence of multiple visits coupled with personal observations that no apparent physical or emotional danger resulted. Establishing the negative that he is not a danger requires a certain accumulation of such evidence. This evidence is relevant in that it tends to make the fact at issue incrementally more probable. Each additional visit without physical or emotional harm makes it slightly more probable that the danger has passed. The district court's finding that O'Hara and his daughter have a strong father-daughter bond places in context O'Hara's interactions and overall relationship with his daughter. The court received evidence that the daughter displays love for her father and "lights up" when she sees him. A child showing strong positive emotions for a parent is direct evidence of emotional health and indirect evidence of

physical health. Importantly, the court received no evidence showing harm to the child resulting from O'Hara's recent visits. The most recent direct evidence of harm to the child arose from the child's witnessing her father punching her mother eight months prior during an exchange. Evidence in the record supports the district court's finding the child's physical and emotional health is not currently endangered by allowing unsupervised rather than supervised visits. We are not left with a definite and firm conviction that the district court made a mistake in finding O'Hara accumulated sufficient evidence to rebut the presumption under § 14-09-29.

[¶ 13] Schneider argues the district court clearly erred in relying on testimony from O'Hara's counselor regarding anger management sessions he had completed. O'Hara violated the terms of his domestic violence protection order by making an angry gesture at Schneider in August 2016 while he was undergoing treatment. The court noted O'Hara may have violated the protection order again in a second incident in March 2017. These acts occurred during and shortly after he had completed his treatment, and Schneider argues his continued pattern of violations occurring after the completion of his treatment establishes the district court clearly erred by implicitly crediting O'Hara with success in treating his propensity for domestic violence with anger management counseling. We recognize that appropriate treatment for domestic violence offenders is different from treatment for anger management. *See Interest of B.N. & K.K.*, 2003 ND 68, ¶ 24, 660 N.W.2d 610. O'Hara cannot be said to have erased his history of domestic violence by attending several anger management counseling sessions. On the narrower issue of whether unsupervised visits pose a danger to the child's physical or emotional health under § 14-09-29, it was not error to consider the counselor's testimony regarding O'Hara's progress in addressing coping skills, anger management, and emotional triggers. Such counseling does not fully address the broader issue of domestic violence in determining residential responsibility and parenting time, but it is relevant to whether O'Hara is likely to endanger the child if left unsupervised.

[¶ 14] Schneider also argues the district court erred in its best interests analysis. The district court received testimony and other evidence that favored both parties' positions, and it made findings on factors relevant to the supervised visitation issue. It determined that those factors favored O'Hara within the context of the supervised visitation issue before the court. We will neither reweigh evidence nor reassess witness credibility. *Interest of R.W.B.C.*, 2017 ND 144, ¶ 8. We find no clear error in the district court's findings on the best interests factors.

## IV

[¶ 15] We affirm, concluding the district court's findings are not clearly erroneous.

[¶ 16] Jerod E. Tufte

Daniel J. Crothers

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.

McEvers, Justice, concurring specially.

[¶ 17] I concur in the result. I agree with the majority, that based on the standard of review and the deference we give to the trial court, we must affirm. Nonetheless, I have grave concerns. While the majority recognizes there is a difference between treatment for anger management and treatment for domestic violence, it does not expound on the importance of the perpetrator receiving the appropriate

treatment for domestic violence. Majority, at ¶ 13.

[¶ 18] Despite finding a pattern of domestic violence, including the child being present when O'Hara struck Schneider in the face hard enough to knock her down, the district court minimized the potential lasting effects of domestic violence on the child. I also am concerned that the district court appears to have been at least partly persuaded that O'Hara has appropriately addressed his pattern of domestic violence by completing an anger management program. The counselor's testimony was offered without objection. While counsel for Schneider attempted to point out that anger management was not appropriate for treatment of domestic violence, no expert testimony was offered to support the position.

[¶ 19] The district court noted:

Much of the testimony developed in this trial is related to Mr. O'Hara's attempt to control Ms. Schneider. The continued threat of not bringing L.K.S.O. back at scheduled times is an inappropriate effort at attempting to control and manipulate Ms. Schneider. Another example of this is the threat of letting L.K.S.O. to stay up until midnight. Another attempt to control or manipulate Ms. Schneider is demonstrated by telling Ms. Schneider that L.K.S.O. was having a reaction to a vaccination when, in fact, she was not. There is also the name calling, all of which is inappropriate. It's this use of L.K.S.O. as leverage against Ms. Schneider that is inappropriate.

The district court recognized these behaviors were inappropriate, but did not recognize that this evidence also indicates that treatment for anger management has not gotten to the root of O'Hara's behaviors. Rather, it shows a continued need to assert power and control over Schneider, typical of the cycle of domestic violence.

[¶ 20] It is difficult to be too harsh with the district court, when the only evidence before the district court was that anger management had resolved the domestic violence issues between the parties, as testified by O'Hara's expert. Schneider's attorney was unsuccessful in getting evidence that anger management is an inappropriate treatment for domestic violence in the record.

[¶ 21] However, according to a Judicial Checklist prepared by the Judicial Subcommittee of the American Bar Association Commission on Domestic Violence, anger management programs are not appropriate for perpetrators of domestic violence, because they fail to adequately address the seriousness of the violence, minimize the dynamics of power and control at the root of the behaviors, and have not been shown to reduce violence. While not before the district court here, this checklist is, or should be, available to every district judge in North Dakota. Another resource for the district court when faced with issues of domestic violence is the North Dakota Domestic Violence Benchbook, last updated in 2014.

[¶ 22] I am hopeful that the remedy fashioned by the district court requiring the presence of a third party or supervised exchanges will be successful to protect the child.

[¶ 23] Lisa Fair McEvers