2017 ND 60

**Rebecca Lynn CURTISS, Plaintiff**

v.

**Spencer Kerry CURTISS, Defendant and Appellant**

No. 20160064

Supreme Court of North Dakota.

Filed 3/20/2017

Spencer K. Curtiss (on brief), self-represented, P.O. Box 5521, Bismarck, ND 58506–5521, defendant and appellant.

Rebecca L. Curtiss, plaintiff, no appearance.

McEvers, Justice.

[¶ 1] Spencer Curtiss appeals from the district court Third Amended Judgment modifying his parenting time and its order denying his motion to reconsider. We remanded to the district court for further findings and retained jurisdiction under N.D.R.App.P. 35(a)(3). We conclude on remand the district court made adequate findings to support its decision to suspend visitation of D.C., but that the findings suspending P.C.'s visits to the penitentiary are inadequate and are not supported by the record. The district court's judgment is affirmed in part, reversed in part, and remanded for further proceedings.

I

[¶ 2] Our prior decision in Curtiss v. Curtiss, 2016 ND 197, 886 N.W.2d 565, sets forth the relevant facts of this case, which we repeat here only insofar as necessary to assist in resolving the remaining issues.

[¶ 3] Spencer Curtiss is incarcerated at the North Dakota State Penitentiary. Rebecca Curtiss has primary residential responsibility and, based on the stipulation between the parties, Spencer Curtiss was to have parenting time every other weekend at the state penitentiary supervised by Rebecca Curtiss. In July 2015, Spencer Curtiss moved the district court to enforce his parenting time, and Rebecca Curtiss moved to suspend Spencer Curtiss's parenting time while he is incarcerated. Rebecca Curtiss argued the visits to the state penitentiary are harmful to the children.

[¶ 4] The district court held a hearing on December 4, 2015, at which Rebecca Curtiss and the children's therapist, Steve Huebschwerlen, testified. The Third Amended Judgment entered by the district court did not require the children to visit Spencer Curtiss during his incarceration, unless they wanted to visit and, in such instances, the parenting time must be supervised by a counselor or therapist. Spencer Curtiss appealed. While retaining jurisdiction under N.D.R.App.P. 35(a)(3), we remanded to the district court to make findings of fact on whether there was a material change in circumstances, whether suspended visitation is necessary because visitation is likely to endanger the children, and whether modification was in the best interests of the children. Curtiss, 2016 ND 197, 886 N.W.2d 565. The district court issued further findings of fact on October 27, 2016.

This Court allowed the parties an opportunity for further briefing following remand.

## II

[¶ 5] As we stated in Curtiss, 2016 ND 197, ¶ 12, 886 N.W.2d 565,

"Modification of parenting time proceedings are governed by a standard established through case law." Bredeson [v. Mackey], 2014 ND 25, ¶ 6, 842 N.W.2d 860 (citing Dufner v. Trottier, 2010 ND 31, ¶ 13, 778 N.W.2d 586). " 'To modify parenting time, the moving party must demonstrate a material change in circumstances has occurred since entry of the previous parenting time order and that the modification is in the best interests of the child.' " Prchal [v. Prchal], [2011 ND 62,] ¶ 11, [795 N.W.2d 693] (quoting Dufner, at ¶ 6; see also Simburger [v. Simburger], [2005 ND 139,] ¶ 13[,] [701 N.W.2d 880] ). A material change in circumstances is important new facts that have occurred since the entry of the previous parenting time order. Prchal, at ¶¶ 11–12. In Hendrickson v. Hendrickson, we recognized that parenting time between a parent without primary residential responsibility is presumed to be in the child's best interests, and "a court should only withhold visitation when it is likely to endanger the child's physical or emotional health." 2000 ND 1, ¶ 21, 603 N.W.2d 896 (quotation marks omitted); see also Paulson v. Paulson, 2005 ND 72, ¶¶ 19–22, 694 N.W.2d 681 (concluding the district court impermissibly delegated authority to decide visitation to a third party when no finding was made that unrestricted visitation is likely to endanger the child's physical or emotional health). We have further recognized that denying a parent without primary residential responsibility parenting time with a child is " 'an onerous restriction,' such that 'physical or emotional harm resulting from the

visitation must be demonstrated in detail' before it is imposed." Hendrickson, 2000 ND 1, ¶ 21, 603 N.W.2d 896 (citing Johnson v. Schlotman, 502 N.W.2d 831, 835 (N.D.1993)). Finally, when awarding or modifying parenting time the district court "may not rely solely on the child's wishes in visitation enforcement and modification actions[.]" Votava v. Votava, 2015 ND 171, ¶ 15, 865 N.W.2d 821.

[¶ 6] It is not the wishes or desires of the parents, but rather the best interests of the child that are paramount when considering modification of parenting time. Seibold v. Leverington, 2013 ND 173, ¶ 19, 837 N.W.2d 342. Further, under N.D.C.C. § 14–05–22(2), the district court must "grant such rights of parenting time as will enable the child to maintain a parent-child relationship that will be beneficial to the child, unless the court finds, after a hearing, that such rights of parenting time are likely to endanger the child's physical or emotional health." A district court's decision regarding parenting time is a finding of fact subject to the clearly erroneous standard of review. Bredeson, 2014 ND 25, ¶ 5, 842 N.W.2d 860. "A finding of fact is clearly erroneous if there is no evidence to support it, if the finding is induced by an erroneous view of the law, or if the reviewing court is left with a definite and firm conviction that a mistake has been made." Seibold, at ¶ 12.

### A

[¶ 7] On remand, the district court found there was a material change in circumstances since the Second Amended Judgment was entered on September 10, 2013. In support of this finding, the district court further found:

Although the parties had contemplated that Mr. Curtiss's time with the children would be supervised time at the

State Penitentiary, those visits did not go well. Ms. Curtiss testified that the children were upset by Mr. Curtiss's conversations about Lucifer. Ms. Curtiss described that as "Witchcraft, just them being special, them having abilities, them being special more than anybody else." . . .

This type of conversation was upsetting to the children, and impacted their emotional health.

In addition, Mr. Curtiss ignored the children and attempted to discuss adult topics with their mother during visitation time. He would discuss his relationship with Ms. Curtiss, and discuss his imprisonment issues in front of the children. The children, and particularly D.C., were hurt by Mr. Curtiss's refusal to engage with them in a reasonable manner during visits.

Ms. Curtiss observed the impact of visits on the children. D.C., who was 13 at the time of the hearing, would respond to visits with depression and anger. He had to be hospitalized after a visit because of the impact the visit had on his mental health. P.C., who was 10 at the time of the hearing, exhibited less exaggerated responses, but the conversations Mr. Curtiss engaged in were inappropriate for a child of her age.

"A material change of circumstances can occur if a child's present environment may endanger the child's physical or emotional health or impair the child's emotional development." Siewert v. Siewert, 2008 ND 221, ¶ 18, 758 N.W.2d 691. We have stated evidence of a dysfunctional relationship between the parents that has caused the children emotional distress can amount to a material change in circumstances. Id. Spencer Curtiss was utilizing visitation with his children to discuss his relationship with their mother and other inappropriate topics. The district court found both chil-

dren were upset by the conversations they were subjected to during the visitations with Spencer Curtiss, with D.C. being impacted in such a way that required hospitalization. The district court's findings are supported by the record. The district court did not err in finding a material change in circumstances.

**B**

[¶ 8] The next step in the analysis is whether modification is necessary in the best interests of the children. Based on the above findings, additional findings made by the district court, and after reviewing the entire record, we conclude the district court's decision to modify Spencer Curtiss's parenting time with D.C. is not clearly erroneous. We summarily affirm the district court's parenting time decision with D.C. under N.D.R.App.P. 35.1(a)(2).

**C**

[¶ 9] In regard to P.C., further analysis is necessary. This Court suggested, but did not require, on remand the district court consider each child separately to determine if modification was necessary. On remand, the district court made general findings as to both children, and specific findings as to each child. Therefore, we consider whether the district court's findings after remand are sufficient to show suspended visitation is necessary because visitation is likely to endanger P.C., and whether such a finding is supported by the record. "[P]arenting time between a parent without primary residential responsibility is presumed to be in the child's best interests, and 'a court should only withhold visitation when it is likely to endanger the child's physical or emotional health.'" Curtiss, 2016 ND 197, ¶ 12, 886 N.W.2d 565 (quoting Hendrickson, 2000 ND 1, ¶ 21, 603 N.W.2d 896) (quotation marks omitted). However, "a restriction on visitation must be based on a preponder-

ance of the evidence and be accompanied by a detailed demonstration of the physical or emotional harm likely to result from the visitation." Marquette v. Marquette, 2006 ND 154, ¶ 9, 719 N.W.2d 321.

[¶ 10] The district court's order makes a general finding that it is not in the best interests of the children to force the children to visit Spencer Curtiss in the prison setting. The district court found both children were upset by the conversations and it impacted their emotional health. The district court recognized the children were affected differently by the visits. The district court found P.C., who was ten years old at the time of the hearing, exhibited less exaggerated responses than D.C., who required hospitalization after one of the visits. The order requires Rebecca Curtiss to encourage P.C. to visit Spencer Curtiss, but does not require P.C. to visit. In effect, the district court's order leaves visitation up to the discretion of P.C. and Rebecca Curtiss.

[¶ 11] We do not encourage the use of visitation provisions giving one parent total control over the time and manner of the other parent's visitation. Marquette, at ¶ 10 (referencing Wigginton v. Wigginton, 2005 ND 31, ¶ 12, 692 N.W.2d 108). Such provisions should be reserved for the most exceptional circumstances and only when the custodial parent demonstrates a willingness to foster the parent-child relationship between the child and the other parent. Marquette, at ¶ 10.

[¶ 12] The district court found Huebschwerlen worked with P.C., but not as much as his contact with D.C. The district court further found Huebschwerlen indicated that P.C. is ambivalent about the visits with her father at the State Penitentiary, and that those visits sometimes upset her. To determine if the district court's findings are supported by the record, we review the transcript of the hearing. Huebschwerlen, a therapist in private practice in Bismarck, testified about his treatment of the children as follows:

Q. Have you had contact with P.C., the daughter involved in this matter?

A. Yes, I have.

Q. And how many visits would you say you had with P.C.?

A. Significantly less. I would probably even say maybe a dozen.

. . .

Q. Okay. And have you been able to form an opinion regarding whether P.C. should have visits at the prison?

A. I have.

Q. Okay. And what's that opinion?

A. She's considerably more ambivalent than D.C. is. And so, you know—and I formed my opinion from asking the kids directly. She's indicated that she would be open to it. She has, over the years, expressed similar concerns about how you know, sometimes it upsets her; sometimes it doesn't. But at this point there's not been the same strong correlation of emotional upset.

Rebecca Curtiss also testified that Spencer Curtis discussed inappropriate topics in front of the children, including Lucifer, Witchcraft, getting back together with her, and general complaints about who put him in prison. Rebecca Curtiss testified that P.C.'s reactions to these conversations was: "P.C. was just blah.... Blah. Just no attitude at all." Rebecca Curtiss testified further in regard to the children visiting generally and with more particularity on P.C.'s visits:

Q. Do you think it's in the children's best interest to see their father at the prison right now?

A. Not at this time.

Q. I know we've been talking a lot about D.C., do you think it's appropriate for P.C. to go out there?

A. P.C.—I don't know—it's like she wants to go but she's so in the middle of it. I don't know right now. I just—I don't know.

Rebecca Curtiss went on to say she would take the children to visit if the children asked so long as the therapist or some other person monitor the children.

[¶ 13] Based on the testimony of the therapist and Rebecca Curtiss, we are not convinced Rebecca Curtiss has "demonstrated in detail," by a preponderance of the evidence, that continuing supervised visitation at the penitentiary is likely to endanger P.C.'s physical or emotional health. See Marquette, 2006 ND 154, ¶ 9, 719 N.W.2d 321. The district court's order on remand failed to show the presumption that parenting time is in P.C.'s best interest has been rebutted. Therefore, we are left with a definite and firm conviction that a mistake has been made. The district court's finding that it is not in P.C.'s best interest to visit Spencer Curtiss in the prison setting is not supported by the record and is clearly erroneous.

[¶ 14] However, we agree with the district court, that given Spencer Curtiss's propensity to use supervised parenting time as an opportunity to pursue adult conversations with Rebecca Curtiss, she is not an appropriate person to supervise any such visits. We also agree that a counselor or therapist or other neutral individual should be used to facilitate any such visitation.

[¶ 15] We decline to address further arguments raised by Spencer Curtiss because any issues not already addressed in Curtiss, 2016 ND 197, 886 N.W.2d 565, are either inadequately briefed or are without merit.

III

[¶ 16] We conclude the district court's findings regarding the suspended visitation with P.C. are clearly erroneous and reverse and remand for further proceedings. On remand, the district court must address how supervised visitations by P.C. will be facilitated, and determine which party shall be responsible for any costs associated with supervised visitation by a third party. The district court's judgment is affirmed in part, reversed in part, and remanded for further proceedings.

[¶ 17] Lisa Fair McEvers

Daniel J. Crothers

Carol Ronning Kapsner

Bradley A. Cruff, D.J.

Gerald W. VandeWalle, C.J.

[¶ 18] The Honorable Jerod E. Tufte was not a member of the Court when this case was heard and did not participate in this decision.

[¶ 19] The Honorable Bradley A. Cruff, D.J., sitting in place of Sandstrom, J., disqualified.