# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

---

2020 ND 148

---

Alicia Wisnewski,                                        Plaintiff and Appellant

  v.

Timothy Wisnewski,                                        Defendant and Appellee

---

No. 20190209

---

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Steven L. Marquart, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by McEvers, Justice

Michael L. Gjesdahl (argued) and Kari A. Losee (appeared), Fargo, ND, for plaintiff and appellant.

Erica L. Chisholm (argued) and Jonathan L. Green (on brief), Wahpeton, ND, for  defendant and appellee.

# Wisnewski v. Wisnewski
## No. 20190209

**McEvers, Justice.**

[¶1]   Alicia Wisnewski appeals from a divorce judgment distributing property, awarding spousal support, declining to award attorney's fees, determining parenting time, decisionmaking responsibility, and child support.   Alicia Wisnewski argues the district court's findings on domestic violence are insufficient and the finding that the statutory domestic violence presumption was rebutted is clearly erroneous.   She also argues the court erred in determining joint decisionmaking responsibility, distributing property, allocating debts, failing to award attorney's fees, and in determining child support and spousal support.   We affirm in part, reverse in part, and remand.

I

[¶2]   Alicia Wisnewski and Timothy Wisnewski were married in 1997 and have three children together, A.R.W., E.C.W., and I.A.W.   Alicia Wisnewski works as a veterinarian, is the sole owner of a veterinary center, a partner in an animal boarding facility, and was mainly responsible for the household bills. For 18 years, Timothy Wisnewski was self-employed with his own tree service and generally did not work during the months of October through April.   On December 28, 2017, the parties separated after an incident of domestic violence.   Stemming from the incident, Timothy Wisnewski was charged and plead guilty to felony C aggravated assault domestic violence and felony C interfering with an emergency call.   Prior to initiation of the divorce, a permanent domestic violence order was entered to protect Alicia Wisnewski and the minor children.   A divorce action was initiated in June 2018.   A trial was held April 4 and 5, 2019.

[¶3]   The district court heard conflicting testimony.   Timothy Wisnewski testified he stayed home with the children during his time off work.   Alicia Wisnewski testified Timothy Wisnewski only stayed home with the children as infants, and once the children started preschool, she was the primary caretaker and often had to have friends and co-workers help watch the children while

she worked. Alicia Wisnewski testified that during the marriage, Timothy Wisnewski would smoke marijuana, drink alcohol excessively, drive drunk and high, and alleged approximately twenty years of substantial verbal, physical, and sexual abuse, some of which Timothy Wisnewski corroborated.

[¶4] Alicia Wisnewski testified she is afraid of Timothy Wisnewski as he told her on multiple occasions he could kill her. According to Alicia Wisnewski, he also said if she dated someone, he would kill them both. She described that initially the abuse was verbal, but the physical abuse began to "ramp up" in the last year and escalated until December 28, 2017.

[¶5] Alicia Wisnewski testified she stopped sleeping in the bedroom and slept on the couch for last five or six months of their marriage. Timothy Wisnewski's testimony was consistent on this point. She stated she slept on the couch because he raped her many times.

[¶6] Alicia Wisnewski testified that in February 2017, Timothy Wisnewski choked her, bit her, and threw a heavy keychain at her head after she said she would not have sex with him. Pictures of bite marks on Alicia Wisnewski were introduced at trial.

[¶7] Alicia Wisnewski testified that on September 1, 2017, after she told Timothy Wisnewski not to touch her, he yelled expletives at her, said he would give her something to be scared about, grabbed her wrists, pulled her off the couch, and kneed her in the jaw. Alicia Wisnewski testified he said he would cut her head off, they would not find her, and made a decapitation motion. Alicia Wisnewski stated their child, A.R.W., was on the couch asleep, woke up, and Timothy Wisnewski told A.R.W. "mom wouldn't have sex" and left the room. Alicia Wisnewski testified A.R.W. told her he had faked sleeping and heard it all. Alicia Wisnewski testified that later the next day, Timothy Wisnewski grabbed her from behind, pushed her on the bed, pinned down her shoulders with his knees, and tried to masturbate onto her face. Timothy Wisnewski denied doing these things when he testified.

[¶8] Alicia Wisnewski alleged Timothy Wisnewski assaulted her on November 3, 2017 and chipped her tooth. She introduced pictures of the

chipped tooth and her lip. Timothy Wisnewski testified he chipped Alicia Wisnewski's tooth by accident.

[¶9] Alicia Wisnewski testified that on December 7, 2017, after she told Timothy Wisnewski she was not going to bed with him, he grabbed her breast and twisted it hard, causing her to drop to the ground. She testified he grabbed her neck, pulled her onto the couch, wrapped his legs around her so she could not move, "kissed" her by covering her nose and mouth with his mouth, squeezed her so she could not breathe, and said "now you should be scared because I can kill you any time." At trial, Alicia Wisnewski produced pictures of bruises that resulted on her shoulder, on her cheek, on her chin, and on her thigh. Timothy Wisnewski denied doing these things.

[¶10] Alicia Wisnewski testified that on December 17, 2017, Timothy Wisnewski came into the living room and told her to go to the bedroom. She told him no and he yelled expletives at her, threw pillows at her, sat on her chest, read Bible verses about wives submitting to their husbands, and shoved his fingers into her crotch, trying to put his fingers into her vagina through her leggings.

[¶11] Alicia Wisnewski testified that on December 28, 2017, she was working when Timothy Wisnewski told her to come to bed. She said no, and he sat on her legs, closed her laptop and said "give me some love." She told him to get off, and he threw the laptop on the floor. She testified he grabbed her ponytail, licked her face, rubbed his facial hair on the side of her face, and told her "this is love. This is what you get when you don't give me sex." Alicia Wisnewski said her face was red from him rubbing his whiskers on her face and introduced pictures at trial. She testified he then grabbed her around the chest and pushed her face into the couch, leaving her unable to breathe. She testified A.R.W. came into the room and said "Dad, you're hurting her. Dad, you need to stop it." Timothy Wisnewski then let her go and she grabbed her cell phone and went into the bathroom, but he came in and pried the phone out of her hands. She testified she then grabbed the cordless phone, and Timothy Wisnewski wrestled the cordless phone from her. When he left, she called 911.

[¶12] Timothy Wisnewski testified that on December 28, 2017 he asked Alicia Wisnewski for a kiss and hugged her. He agreed she tried to get away and he would not let her. He agreed he licked her face and testified he gave her a "whisker rub" but denied rubbing her face raw or squeezing her so she could not breathe or pushing her face into the couch. He agreed the children were awakened by the incident and two of his children appeared, and that A.R.W. had a knife and told Timothy Wisnewski to stop hurting his mom. Timothy Wisnewski agreed he let Alicia Wisnewski go, chased her, and grabbed the phone from her.

[¶13] Following this incident, Timothy Wisnewski was arrested, charged with aggravated assault and interference with an emergency call. He was released with the bail requirement not to have contact with Alicia Wisnewski by phone or in person. Alicia Wisnewski testified he violated this condition the day he was released; she came home and found a note on the counter, saying he had taken all the guns and ammo. She further testified Timothy Wisnewski was charged for violating the no contact order. As part of the sentence for the aggravated assault, the court ordered, as a condition of probation, Timothy Wisnewski continue treatment with Dr. Krislea Wegner, a licensed psychologist.

[¶14] The district court received in evidence during the trial a copy of a permanent domestic violence protection order entered in March 2018. In the order, the court found Timothy Wisnewski committed domestic violence and also that he committed a pattern of domestic violence. The court also received in evidence an order finding Timothy Wisnewski in contempt for failing to follow requirements of the domestic violence protection order. The order specifically noted Timothy Wisnewski failed to get a psychiatric evaluation, participate in the STAND program or individual therapy sessions for his tendency to form maladaptive relationships, obtain anger management training skills, participate in the appropriate level of chemical health treatment, or receive parent education on healthy discipline and other parent/child relationship issues recommended by Dr. Wegner.

4

[¶15] Dr. Wegner also testified at the trial. Dr. Wegner testified Timothy Wisnewski admitted to her he called Alicia Wisnewski expletives, used marijuana daily, drank twelve beers a day, and spent time in his "clubhouse" smoking marijuana and drinking. Dr. Wegner testified the protection order placed the condition of continuing treatment with her, but Timothy Wisnewski had not continued treatment with her. Dr. Wegner made six recommendations and he did not follow any of the recommendations and treatment at Hope Unit was not part of her recommendations. Timothy Wisnewski testified he went to Hope Unit outpatient treatment, he had been sober for 15 months, and he did not use marijuana anymore.

[¶16] Dr. Wegner testified she also interviewed A.R.W., who told Dr. Wegner his father drank every day and he knew his father smoked marijuana. A.R.W. also indicated he knew his father was hurting his mother and could hear her screaming at night. He indicated he did not intervene because he did not want to cause trouble, except in the final instance where he felt he needed to and took a knife and confronted his father. Dr. Wegner testified A.R.W. told her he was very scared for his mother.

[¶17] After trial, the district court made findings and entered judgment, granting an absolute decree of divorce. The parties stipulated to primary residential responsibility. The court found domestic violence occurred, but found the domestic violence presumption had been rebutted and awarded Timothy Wisnewski unsupervised parenting time and joint decisionmaking responsibility. The court divided the marital property and awarded Timothy Wisnewski spousal support. The court also ordered Timothy Wisnewski to pay child support. Alicia Wisnewski appealed.

[¶18] After oral argument on the appeal, Alicia Wisnewski moved this Court to take judicial notice under N.D.R.Ev. 201, that the domestic violence protection order, which was to expire, had been extended. Because the district court received the domestic violence protection order into evidence, we take judicial notice the order has been extended.

[¶19] On appeal, Alicia Wisnewski argues the district court's findings regarding domestic violence are insufficient and ignored evidence favoring her.

[¶20] This Court has stated:

> A district court's parenting time determination is a finding of fact that we review under our clearly erroneous standard. A finding of fact is clearly erroneous (1) if it is induced by an erroneous view of the law; (2) if no evidence exists to support it; or (3) if the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made.

*O'Hara v. Schneider*, 2017 ND 159, ¶ 7, 897 N.W.2d 326 (citations omitted).

[¶21] The district court, in making its findings regarding domestic violence stated:

> Alicia urges this Court to require Timothy to have supervised parenting time with the children. Parenting time with a parent without residential responsibility is presumed to be in the child's best interests, and "a court should only withhold visitation when it is likely to endanger the child's physical or emotional health." *Curtiss v. Curtiss*, 2017 ND 60, ¶ 5, 891 N.W.2d 358. The court further stated that "denying a parent without [primary] residential responsibility parenting time with a child is 'an onerous restriction,' such that 'physical or emotional harm resulting from the visitation must be demonstrated in detail' before it is imposed." *Id.*
>
> On December 28, 2017, Timothy assaulted Alicia in an act of domestic violence. He was charged with Aggravated Assault Domestic Violence, a C Felony. On September 17, 2018, Timothy pled guilty to that offense.

[¶22] While this Court has said parenting time should only be withheld when it is likely to endanger the child's physical or emotional health, withholding parenting time is not at issue here. Parenting time is presumed to be in the child's best interests, but when domestic violence has been alleged the district court must consider N.D.C.C. § 14-09-29(2), which provides:

If the court finds that a parent has perpetrated domestic violence and that parent does not have residential responsibility, and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, the court shall allow only supervised parenting time with that parent unless there is a showing by clear and convincing evidence that unsupervised parenting time would not endanger the child's physical or emotional health.

[¶23] "The district court's findings should be sufficiently detailed to allow this Court to understand the basis for its decision." *Mowan v. Berg*, 2015 ND 95, ¶ 9, 862 N.W.2d 523. Alicia Wisnewski testified about many instances of domestic violence. Timothy Wisnewski denied many of these allegations. The court's only finding on domestic violence was the acknowledgment of Timothy Wisnewski's criminal conviction for aggravated assault domestic violence. The record reflects the conviction for aggravated assault was for violating N.D.C.C. § 12.1-17-02(1)(a), which requires willfully causing serious bodily injury. The conviction alone in this instance is sufficient reason to find the statutory presumption was triggered based on serious bodily injury. While we would have preferred more detailed findings, especially considering the conflicting testimony of the parties, it is clear from the record Timothy Wisnewski's conduct triggered the presumption of supervised parenting under N.D.C.C. § 14-09-29(2). The court's finding was not clearly erroneous.

III

[¶24] Alicia Wisnewski argues the district court erred in finding the domestic violence presumption was rebutted and allowing Timothy Wisnewski unsupervised parenting time. We agree.

[¶25] The district court found Timothy Wisnewski had perpetrated domestic violence. As such, Timothy Wisnewski should only receive supervised parenting time "unless there is a showing by clear and convincing evidence that unsupervised parenting time would not endanger the child's physical or emotional health." N.D.C.C. § 14-09-29(2).

7

[¶26]  The district court found the presumption was rebutted, stating:

> Although two of the children witnessed this incident, none of this violence was directed toward the children.  This event occurred over 15 months ago. At the time of this event, Timothy was consuming alcohol and smoking marijuana.  The Court finds Timothy's testimony credible that he has discontinued using alcohol and marijuana since this incident.  He has completed a Substance Use Disorder Comprehensive Assessment at the Hope Unit of St. Francis Health in Breckenridge.  Timothy also completed the outpatient program that was recommended.  Timothy loves his children very much.
>
> The Court finds that Timothy has proved by clear and convincing evidence that unsupervised parenting time will not endanger the children's physical or emotional health.

### A

[¶27] When considering whether the presumption was rebutted, the district court found although two of the children witnessed the violence, none of the violence was directed toward them.  This Court has said using the rationale there was no violence toward the children "disregards the many cases in which this Court has stressed that 'the lack of violence toward the children does not rebut the presumption' under . . . § 14-09-29(2)."  *O'Hara v. Schneider*, 2017 ND 53, ¶ 27, 890 N.W.2d 831.  *See also Zuger v. Zuger*, 1997 ND 97, ¶ 30, 563 N.W.2d 804; *Engh v. Jensen*, 547 N.W.2d 922, 925 (N.D. 1996); *Bruner v. Hager*, 534 N.W.2d 825, 828 (N.D. 1995).  "[T]he legislature intended that courts *presume* that *any* domestic violence negatively impacts the best interests of the children."  *Engh*, at 925.  This statutory presumption rests on the premise that children are harmed emotionally and too often physically when they are around perpetrators of domestic violence.

[¶28] We have analyzed a similar presumption in N.D.C.C. § 14-09-06.2(1)(j), and said that domestic violence as defined under N.D.C.C. § 14-07.1-01 means the presumption "arises whenever violence is directed at *any* member of a household or family, not only when a child is the direct victim of the violence."  *Heck v. Reed*, 529 N.W.2d 155, 163 (N.D. 1995).  "If the legislature had intended a distinction be drawn between the adverse impact of the violence directed at

a parent but not a child, it would not have defined 'domestic violence' as harm to family and household members, but would have used a more limiting phrase such as 'child abuse.'" *Id.* "[C]hildren are victimized by the climate of violence created by domestic violence between their parents, even if they are not direct targets of the abuse." *Id.*

[¶29] Even though the children may not have physical injuries or been the intended targets of Timothy Wisnewski's domestic violence, children are still victimized by the climate a domestic violence situation creates. *Any* domestic violence is presumed to negatively impact children. There was unrebutted evidence the children witnessed seeing or hearing the domestic violence, particularly, the December 18, 2017 incident of domestic violence when Wisnewskis' son intervened and used a knife to protect his mother. The district court clearly erred in relying on the "absence" of domestic violence directed at the children to rebut the presumption.

B

[¶30] When considering whether the presumption was rebutted, the district court also found Timothy Wisnewski was consuming alcohol and smoking marijuana when he assaulted Alicia Wisnewski on December 18, 2017. The court also considered Timothy Wisnewski's discontinued use of alcohol and marijuana and completion of an outpatient program as factors to show the presumption was rebutted.

[¶31] The district court's reliance on Timothy Wisnewski's substance use at the time of the aggravated assault to minimize or rationalize the conduct is not appropriate. Drugs or alcohol do not cause domestic violence and may not be used by a perpetrator of domestic violence as an excuse for his or her actions.

> This Court has reversed district courts for rationalizing an individual's acts of physical violence because the victim "pushed a button." Domestic violence is not caused by stress in the perpetrator's life, alcohol consumption, or a particular victim's propensity to push a perpetrator's buttons. Rather, domestic violence is a learned pattern of behavior aimed at gaining a victim's compliance.

9

*O'Hara v. Schneider*, 2017 ND 53, ¶ 26, 890 N.W.2d 831 (citations omitted). The court found Timothy Wisnewski had "also completed the outpatient program that was recommended." This finding has some support in the record. However, it was not the treatment recommendation by Dr. Wegner, the professional whose recommendations Timothy Wisnewski was court ordered to follow in both his criminal case and the domestic violence protection order proceeding.

[¶32] This Court has said perpetrators can "unlearn the pattern of domestic violence; however, this requires sufficient motivation for changing their violent behavior." *Heck*, 529 N.W.2d 155, 165. Additionally, "[a]bsent such proof of rehabilitation, it was clearly erroneous to conclude, as the trial judge did here, that [the perpetrator of domestic violence] will no longer use domestic violence as a means of controlling his intimate partners." *Id*. The treatment Timothy Wisnewski received was solely for his substance abuse, and according to Dr. Wegner, he had not completed any of her six recommendations he was ordered to complete associated with his conditions of probation or as provided in the domestic violence protection order. While laudable, it is insufficient for a perpetrator of domestic violence to complete drug or alcohol treatment to rebut the presumption, because it is not treatment for domestic violence and does not address violent behaviors and tendencies. The district court clearly erred by relying on Timothy Wisnewski's alcohol and drug use and subsequent substance use disorder treatment to find the presumption of domestic violence was rebutted.

C

[¶33] The district court also relied on the fact the December, 18, 2017 violence "occurred over 15 months ago." A divorce action was initiated in June 2018, only 6 months after the aggravated assault domestic violence. While this case deals with unsupervised parenting time, what this Court has said regarding the passage of time in awarding primary residential responsibility is relevant. The "lapse of time alone is not enough to overcome the statutory presumption against awarding custody to a perpetrator of domestic abuse." *Krank v. Krank*, 541 N.W.2d 714, 717 (N.D. 1996). While *Krank* involved the statutory

10

presumption on domestic violence under N.D.C.C. § 14-09-06.2(1)(j), the theory is the same. Lapse of time alone does not overcome the presumption because domestic violence is a learned behavior. *Id.* We have suggested a perpetrator of domestic violence may be able to show rehabilitation by evidence of participation in a treatment program or counseling for domestic violence. *Id.* Timothy Wisnewski has not completed any treatment for domestic violence. In the 15 months the parties had not lived together, he violated a no contact order and was found in contempt in the domestic violence protection order proceeding. Based on the facts of this case, the passage of time alone does not rebut the presumption.

## D

[¶34] The district court also found "Timothy loves his children very much." While no doubt this is true, and is part of the best interest factors for a court to consider, the court did not explain how it rebuts the presumption. A perpetrator of domestic violence might love his or her children, but this is not clear and convincing evidence the perpetrator will not endanger the children.

[¶35] To rebut the presumption there must be a showing by clear and convincing evidence that unsupervised parenting time would not endanger the child's physical or emotional health. The district court, in finding the presumption was rebutted, relied on the "absence" of violence directed toward the children, Timothy Wisnewski's substance abuse and subsequent treatment, the passage of time, and love for his children. After reviewing the entire record, the evidence the court relied on leaves us with a definite and firm conviction that a mistake has been made and fails to provide clear and convincing evidence that unsupervised parenting time would not endanger the children. The court clearly erred in awarding Timothy Wisnewski unsupervised parenting time. We reverse and remand for the court to establish a parenting plan that incorporates supervised parenting for Timothy Wisnewski.

11

IV

[¶36] Alicia Wisnewski argues the district court erred in awarding joint decisionmaking responsibility over the children. Alicia Wisnewski argues there was no agreement, the court did not follow the provisions of N.D.C.C. § 14-09-31, joint decisionmaking responsibility requires her to keep in contact with someone she has a protection order against, and the finding is clearly erroneous.

[¶37] A district court's ruling on decisionmaking is a finding of fact, subject to the clearly erroneous standard. *Dick v. Erman*, 2019 ND 54, ¶ 14, 923 N.W.2d 137. A court need not make separate findings for each best interest factor, but as with parenting responsibility, the court's findings must provide sufficient detail to show the factual basis for the decision. *Hoff v. Gututala-Hoff*, 2018 ND 115, ¶ 6, 910 N.W.2d 896.

[¶38] Regarding decisionmaking, the district court found:

> Alicia and Timothy shall have joint decision making responsibility over the minor children so as to allow each parent to continue to have a full and active role in making major decisions in the children's lives, including, but not limited to, those decisions relating to medical care, religion, and education.

[¶39] The district court also found the parties agreed to make major decisions and determined the parties must make decisions jointly "after discussion and consultation with one another."

[¶40] Section 14-09-31, N.D.C.C., provides in pertinent part:

> 2. If the parents cannot agree on allocation of decisionmaking responsibility, the court shall enter an order allocating decisionmaking responsibility in the best interests of the child.
> . . . .
> 4. If the court finds that domestic violence as defined in section 14-07.1-01 has occurred, the court shall consider such domestic violence in determining whether joint decisionmaking is in the best interests of the child. In such cases, the court shall make orders for the allocation of parental rights and responsibilities that

12

best protect the child, the *parent*, or both. If joint decisionmaking responsibility is granted, even though there is evidence of domestic violence, the court shall provide written findings to support the order.

(Emphasis added.)

[¶41] The parents did not agree on decisionmaking responsibility. The district court clearly erred by including a provision that stated the parties agreed to make major decisions on the health, welfare, education, or upbringing of the children jointly and did not provide findings on the best interests of the children.

[¶42] In addition, N.D.C.C. § 14-09-31 requires the district court to make written findings to support the order of joint decisionmaking if the court finds domestic violence occurred. The court found domestic violence occurred, but did not make written findings to support an order of joint decisionmaking. "When a trial court does not make required findings, it errs as a matter of law, and it is necessary to remand for additional findings." *Horsted v. Horsted*, 2012 ND 24, ¶ 5, 812 N.W.2d 448 (quoting *Sailer v. Sailer*, 2009 ND 73, ¶ 28, 764 N.W.2d 445).

[¶43] We conclude the district court did not provide sufficient findings and we reverse and remand the award of joint decisionmaking. On remand, the court must provide written findings that consider the best interests of the children, and allocate rights and responsibilities in a manner that best protects the children and Alicia Wisnewski.

V

[¶44] Alicia Wisnewski argues the district court erred in awarding spousal support because Timothy Wisnewski did not demonstrate a need for support or that she had the ability to pay.

[¶45] "An award of spousal support is a finding of fact which will not be set aside on appeal unless clearly erroneous." *Schmuck v. Schmuck*, 2016 ND 87, ¶ 6, 882 N.W.2d 918.

The district court must make spousal support awards in consideration of the needs of the spouse seeking support and of the supporting spouse's needs and ability to pay. Additionally, the district court must consider the relevant factors under the *Ruff-Fischer* guidelines in determining an award of spousal support.

*Thompson v. Thompson*, 2018 ND 21, ¶ 30, 905 N.W.2d 772 (citation omitted).

A district court must consider the Ruff-Fischer guidelines in determining whether spousal support is appropriate, including:
[T]he respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Schmuck*, at ¶ 6. "[T]he district court is not required to make specific findings on each factor, provided we can determine the reasons for the court's decision." *Thompson*, at ¶ 30 (quoting *Krueger v. Krueger*, 2008 ND 90, ¶ 8, 748 N.W.2d 671).

[¶46] The district court cited the *Ruff-Fischer* guidelines, stated the parties' ages, and stated Timothy Wisnewski needed support and had been a part-time tree trimmer for most of the marriage, earning $20,000 a year. The court also considered Timothy Wisnewski stayed home to care for the children part of the time, and Alicia Wisnewski was awarded property that is income producing and Timothy was not.

[¶47] Timothy Wisnewski testified he has monthly expenses of $540, but at the time he was not incurring an expense for housing because he was living with a friend rent free. He also testified he had difficulty finding employment due to his felony record. The evidence in the record supports the district court finding Timothy Wisnewski is in need of spousal support.

[¶48] As to Alicia Wisnewski's ability to pay, the district court found her annual income was approximately $90,000 per year. She argues the court

14

erred by "cherry picking" her highest annual income, and did not consider her monthly expenses when determining she had the ability to pay.

[¶49] The record reflects that Alicia Wisnewski's annual income has been steadily increasing, more than doubling over the past five years. The income producing property awarded to Alicia Wisnewski was also considered by the district court. While her estimated monthly budget was not contested, and the court did not address her estimated expense, the evidence in the record supports the court's findings. While we may not have come to the same conclusion, we are not left with a definite and firm conviction that a mistake has been made.

VI

[¶50] Alicia Wisnewski argues the district court erred in its child support calculations and should have awarded child support back to the date the parties separated.

A

[¶51] This Court has stated:

> The standards of review used in child support determinations vary, depending on the issue appealed. Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review.

*Solwey v. Solwey*, 2018 ND 82, ¶ 9, 908 N.W.2d 690 (citation omitted).

[¶52] "Each child support order must include a statement of the net income of the obligor used to determine the child support obligation, and how that net income was determined." N.D. Admin. Code. § 75-02-04.1-02(9). "A mere recitation that the guidelines have been considered in arriving at the amount of a child support obligation is insufficient to show compliance with the guidelines." *Spilovoy v. Spilovoy*, 488 N.W.2d 873, 877 (N.D. 1992). When

15

determining the net income of a self-employed obligor, N.D. Admin. Code § 75-02-04.1-05(4), states that the average of the most recent five years of self-employment activity, "if undertaken on a substantially similar scale, *must* be used to determine self-employment income." (Emphasis added.) When self-employment activity has not been operated on a similar scale, a shorter period may be used. *Id.* A court must either average the financial information of the most recent five-year period, or make specific findings that self-employment activity has not been operated on a substantially similar scale before using a shorter period of time. *Raap v. Lenton*, 2016 ND 195, ¶ 12, 885 N.W.2d 777. Additionally, a self-employed obligor may be found underemployed if the obligor's gross income is significantly less than the statewide average earnings for persons with similar work history and qualifications. N.D. Admin. Code § 75-02-04.1-07(1)(b); *Entzie v. Entzie*, 2010 ND 194, ¶ 15, 789 N.W.2d 550.

> An obligor is presumed to be underemployed if the obligor's gross income from earnings is less than the greater of:
> > a. Six-tenths of this state's statewide average earnings for persons with similar work history and occupational qualifications.

N.D. Admin. Code § 75-02-04.1-07(2)(a).

[¶53] The district court, in finding Timothy Wisnewski had a child support obligation, stated his average gross income over the last three years is $14,820, his monthly income is $1,115, and his monthly obligation is $293. The court admitted in evidence tax returns from 2013 to 2017. The court stated it averaged the gross income over the past three years, but did not state why it did not consider the last five years or how the net income was determined.

[¶54] Timothy Wisnewski testified he had been self-employed as a tree trimmer. The district court did not make specific findings that Timothy Wisnewski's self-employment activity has not been operated on a substantially similar scale before using a shorter period of time to determine income. The court received evidence of average statewide earnings for persons with similar work history and occupation qualifications, but did not address whether Timothy Wisnewski was underemployed. *See* N.D. Admin. Code. §§ 75-02-

04.1-05(6)(b), 75-02-04.1-05(7)(b). We are unable to discern why the court used only the past three years to determine Timothy Wisnewski's gross income or how the court determined his gross income to be $14,820. The court erred by failing to make detailed findings. We reverse and remand for specific findings explaining how Timothy Wisnewski's net income was determined and whether he should be considered underemployed.

B

[¶55] Alicia Wisnewski also argues the district court erred by not awarding child support during the period since the parties' separation.

[¶56] Parents have a duty to support their children. N.D.C.C. §§ 14-09-08, 14-08.1-01. These statutes apply when there is a court ordered obligation, but they also apply when child support has not been ordered. *Hagel v. Hagel,* 2006 ND 181, ¶ 6, 721 N.W.2d 1; *see also Adoption of A.M.B.,* 514 N.W.2d 670, 673-74 (N.D. 1994) (noting the absence of a court order does not absolve a parent's obligation to support a child). "District courts have the authority to award past due child support." *Ackerman v. Ackerman,* 1999 ND 135 ¶ 20, 596 N.W.2d 332 (relying on *Linrud v. Linrud,* 552 N.W.2d 342, 347 (N.D. 1996)).

[¶57] From the record, it appears that from the time of the parties' separation, the children resided with Alicia Wisnewski. Alicia Wisnewski did not move for child support by way of an interim order during the pendency of the divorce. However, at trial, Alicia Wisnewski argued Timothy Wisnewski should be required to pay child support from the date of the parties' separation. In the alternative she argued that in lieu of past child support, the district court award her a disproportionate distribution in property. The court did not address the issue, either in dividing the marital property or in awarding child support. We are unable to discern why the court did not address child support during the parties' separation and we remand for findings.

VII

[¶58] Alicia Wisnewski makes two arguments regarding attorney's fees. First, Alicia Wisnewski argues the district court erred allocating to her attorney's

17

fees of $8,000 and professional fees of $5,000 owed to Dr. Wegner as debts of the marital estate. She also argues the court completely ignored her request for attorney's fees and professional fees under N.D.C.C. § 14-09-29(4).

A

[¶59] "A district court's distribution of marital property is treated as a finding of fact, which we review under the clearly erroneous standard of review." *McCarthy v. McCarthy*, 2014 ND 234, ¶ 8, 856 N.W.2d 762. The district court must apply the *Ruff-Fischer* guidelines when distributing property, including the conduct of the parties during the marriage. *Swanson v. Swanson*, 2019 ND 25, ¶ 12, 921 N.W.2d 666. This Court has not mandated the district court to weigh domestic violence more heavily than other factors under the *Ruff-Fischer* guidelines. *Id.* at ¶ 14. But we may still reverse if we have a definite and firm conviction a mistake has been made.

[¶60] The district court included $8,000 of debt to Gjesdahl Law Firm and $5,000 of debt to Dr. Wegner in Alicia Wisnewski's portion of debts when distributing the marital estate. Timothy Wisnewski owed a debt of $8,000 to Gjesdahl Law Firm and $5,000 to Dr. Wegner pursuant to the domestic violence protection order. The order states Timothy Wisnewski shall pay Alicia Wisnewski for these costs and fees under N.D.C.C. § 14-09-29(4), but nonpayment of these debts should not be grounds for contempt, but should be recognized by the divorce court in the distribution of the marital property. Timothy Wisnewski admitted at trial these debts belonged to him. A court may order a party to a divorce to assume their own separate indebtedness accumulated since separation. *Kosobud v. Kosobud,* 2012 ND 122, ¶ 13, 817 N.W.2d 384 (holding attorney's fees were properly excluded from the property and debt in a divorce). The court's findings under the *Ruff-Fischer* guidelines do not address why Alicia Wisnewski should be responsible for these debts, stemming from Timothy Wisnewski's domestic violence. Under the facts of this case, we are left with a definite and firm conviction a mistake has been made. We reverse and remand for the court to allocate these debts to Timothy Wisnewski.

18

## B

[¶61] Alicia Wisnewski's request for attorney's fees and professional fees in the divorce were made under N.D.C.C. § 14-09-29(4). Whether to award attorney's fees is generally within the discretion of the district court and we will not disturb a court's decision unless the court abuses its discretion. *Datz v. Dosch,* 2014 ND 102, ¶ 22, 846 N.W.2d 724. "A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned decision, or if it misinterprets or misapplies the law." *Id.*

[¶62] Section 14-09-29(4), N.D.C.C., provides:

> In any proceeding dealing with parental rights and responsibilities in which a parent is found to have perpetrated domestic violence, and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, all court costs, attorney's fees, evaluation fees, and expert witness fees *must* be paid by the perpetrator of the domestic violence unless those costs would place an undue financial hardship on that parent.

(Emphasis added.)

[¶63] Timothy Wisnewski argues this statute is not mandatory or absolute. We agree. However, when a parent perpetrates domestic violence as described in the statute, fees *must* be awarded unless those costs would place an undue financial hardship. The district court found Timothy Wisnewski perpetrated domestic violence as defined in the statute. The court abused its discretion by not addressing the presumption that Timothy Wisnewski, as the perpetrator of domestic violence, should pay for the costs of the proceeding. We reverse and remand for the court to either award attorney's fees and professional costs to Alicia Wisnewski or make findings on whether Timothy Wisnewski would suffer an undue financial hardship.

# VIII

[¶64] Alicia Wisnewski generally argues the district court's failure to make detailed findings on domestic violence and misapplication of the law tend to show bias, and that disqualification is necessary on remand.

[¶65] Alicia Wisnewski did not raise the issue of judicial bias in the district court. "The failure to raise the issue of judicial bias in the trial court precludes our review on appeal." *Wenzel v. Wenzel*, 469 N.W.2d 156, 158 (N.D. 1991). To Alicia Wisnewski's argument that the court's findings and rulings show bias, "[a]dverse rulings alone are not evidence of judicial bias or partiality." *Dieterle v. Dieterle*, 2013 ND 71, ¶ 34, 830 N.W.2d 571. Because judicial bias was not raised in the district court, we will not further address it for the first time on appeal.

[¶66] We have considered Alicia Wisnewski's remaining issues and conclude they are unnecessary to our decision or without merit.

[¶67] We affirm the judgment in part, reverse in part, and remand to the district court to make additional findings consistent with this opinion.

[¶68] Lisa Fair McEvers
     Jon J. Jensen, C.J.
     I concur in the result

     Gerald W. VandeWalle

**Crothers, Justice, specially concurring.**

[¶69] I agree with the result and with most of what the majority has written. However, I respectfully disagree with the disposition of the domestic violence presumption issue in Part III(D). There, the majority states, "We reverse and remand for the court to establish a parenting plan that incorporates supervised parenting for Timothy Wisnewski." Majority opinion, at ¶ 35.

[¶70] The underlying judicial inquiry is whether parenting time with Timothy Wisnewski is in the children's best interests. *See* N.D.C.C. § 14-09-29(1) ("A court issuing an order that deals with parenting rights and responsibilities of a child entered under this chapter shall award the parental rights and responsibilities concerning the child to a person, agency, organization, or institution as will, in the opinion of the court, promote the best interests and welfare of the child."). Instead of directing entry of an order requiring supervised parenting time, and instead of freezing the result in this case under the evidence as it existed more than 14 months ago, the children's best interests would be better served by remanding this question for the district court to decide the issue anew.

[¶71] Daniel J. Crothers
Jerod E. Tufte